LASSER, P.J.T.C.
Taxpayer, Global Terminal & Container Services, Inc. (Global), contests deficiency tax assessments imposed by the Director of the Division of Taxation pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., on (1) charges for the temporary storage of empty marine-cargo, containers at dockside, contending that such charges are exempt as charges for the transportation of persons or property under N.J.S.A. 54:32B-8.11, and (2) purchases of chocking materials used in packing marine-cargo containers, contending that these materials are exempt wrapping supplies under N.J.S.A. 54:32B-8.15. The case was submitted for decision under R. 8:8-1(b) on stipulated facts. The stipulated facts follow.
Global is a marine-terminal operator providing terminal and stevedoring services for ocean carriers which transport cargo exclusively in marine containers. Global’s stevedoring services include the handling, parking, staging and servicing of cargo containers in connection with the loading and unloading of container ships. It is vital to the profitability of maritime shipping that “turnaround time” be kept to a minimum. Global can unload and load a container ship in ten hours. This requires that empty containers needed for immediate use be parked in a staging area less than 1,000 yards from the container ships.
Each ocean carrier owns or leases its containers, which rotate in the transportation process. At any point in time, one set of containers is empty and ready to be loaded with cargo, another set is being carried aboard the vessel, and a third set is being emptied of cargo and returned for reuse.
A shipper having enough cargo to fill an entire container usually loads that container at its own plant or facility away from the waterfront. Less-than-container load (LCL) shipments are delivered to Global’s marine terminal where they are loaded into empty containers by Global employees. Each ocean carrier maintains a sufficient number of empty containers at Global for the loading of LCL shipments of cargo, or for transport to *155 foreign ports where more empty containers are needed or to inland sites where full loads of cargo are assembled by the shippers.
Empty containers are kept in Global’s staging area, where they are available for immediate use. These containers remain at Global an average of seven days. Empty containers not needed immediately are stored in storage yards owned or operated by others away from Global’s terminal, and they have to be delivered to Global by truck before they can be used in the transportation process.
Due to space limitations in Global’s staging area, ocean carriers are charged a fee if more empty containers are kept there than are needed for the transportation process. The fee is based on the average number of containers kept in the staging area each month.
Containers are either 20 or 40 feet in length. For operational purposes, containers are measured in 20-foot equivalent units (TEU’s). Thus a 40-foot container is two TEU’s. On average, depending on the needs of an ocean carrier, between 400 and 500 TEU’s may be maintained in Global’s staging area on a daily basis without any charge. The exact number of containers which may remain in the staging area is determined by negotiation between Global and each ocean carrier. The charge to an ocean carrier for having more than the permissible number of TEU’s present for the loading of their vessels is $1 per TEU per day. Thus, the charge for a 40-foot container is $2 per day. A charge is assessed at the end of each month if, during the course of that month, the total TEU’s maintained in Global’s staging area by an ocean carrier exceeds the product of the daily permissible number of TEU’s allowed that ocean carrier multiplied by the number of days in that month. In comparison, the charge for storing empty containers in independent storage yards is $.25 per TEU per day.[1]
*156 Chocking is packing material used in stevedoring operations to protect cargo against slippage, breakage or leakage. Global uses this material when it loads LCL shipments of cargo into empty containers. Chocking is also used to surround or divide containers in the hold of a container ship. The chocking material may be straps with weblock and ratchet buckles or lashings, shoring bars or shoring beams, inflatable dunnage bags, lumber or plywood. Some chocking is reusable.
I

Container Storage Charges

The Director has determined that Global’s charges to ocean carriers for parking excess empty containers in its staging area are taxable pursuant to N.J.S.A. 54:32B-3(b)(3), which imposes a sales tax on charges for the storage of tangible personal property. Global contends that it is not in the business of storing empty containers and that the parking of containers in its staging area is incidental to its stevedoring operations. It argues that the storage charges are therefore exempt as transportation charges. Global also contends that the storage charge is not a charge for the storage of containers but a penalty fee designed to discourage carriers from parking excess empty containers in Global’s staging area.
The Director contends that the storage of empty containers is not part of stevedoring services and that Global is charging for storage. The Director argues that the storage charges are assessed on excess empty containers which are not needed in the staging area and therefore are not part of the transportation process.
Tax exemption statutes are to be strictly construed against the claimant because an exemption from taxation is a departure from the equitable principle that everyone should bear one’s just and equal share of the public tax burden. Taxation is the rule; exemption is the exception to the rule. The legislative design to release one from one’s just proportion of the public burden should be expressed in clear and unequivocal terms. *157 The burden is on the claimant to clearly bring itself within an exemption provision. Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952); Phelps Dodge Indus. v. Taxation Div. Director, 8 N.J.Tax 354, 358 (Tax Ct. 1986).
N.J.S.A. 54:32B-8.11 provides:
Receipts from charges for the transportation of persons or property are exempt from the tax imposed under the Sales and Use Tax Act.
In Maher Terminals v. Taxation Div. Director, 212 N.J.Super. 164, 168, 514 A.2d 532 (App.Div.1986), the court indicated that the primary activity of a stevedoring company is exempt from sales and use taxation under § 8.11. However, the court held that the exemption for transportation charges does not extend to fees charged by a stevedoring company for the repair and maintenance of cargo containers. In this case, Global has the burden of proving that the fees charged for parking excess containers in its staging area are transportation charges exempt from taxation.
The charge exacted by Global for allowing a carrier to keep excess containers in its staging area is a storage charge, even though designed to discourage such storage. The charge is for the privilege of parking excess containers and is based on the number of excess containers parked in Global’s staging area.
The stipulated facts state that Global negotiates with each carrier to determine the number of containers the carrier needs to have in the staging area. In describing the subject charges, the stipulation of facts states that “ocean carriers are charged a fee if more empty containers are present than are needed for the transportation process.” I find that the agreements between Global and the carriers it services determine the number of containers necessary for the transportation of cargo. Thus, Global’s charges for parking excess containers (those not presently needed in the transportation process) are taxable storage charges and are not exempt under § 8.11.
Global also argues that the difference in price for storing containers in a storage yard and storing them in its staging *158 area demonstrates that the containers in the staging area are being put to a transportation use. However, the higher price for storage in the staging area could just as easily be attributable to the higher cost of storage in a more valuable location or be justified by the additional cost involved in moving a container from the staging area to the storage yard and back to the staging area. The difference in price therefore does not establish a nonstorage use.
Finally, Global suggests that the charge is not taxable because it is a penalty fee. This argument ignores the fact that the fee is not an abstract penalty amount. It is based on the number of containers kept in the staging area. Putting a different label on the fee does not change its true nature as a storage charge.
I conclude that Global’s charges for parking excess containers in its staging area are taxable charges for the storage of tangible personal property pursuant to N.J.S.A. 54:32B-3(b)(3).
II

Chocking

The second issue in this case involves the Director’s imposition of a use tax on Global’s purchases of chocking materials (lumber, dunnage bags, shoring bars, etc.) which are used for packing cargo containers to surround and protect property while in transit. Global is not a carrier. Its function is limited to packing and loading containers onto ships of a carrier. Global contends that purchases of chocking materials are exempt from tax under N.J.S.A. 54:32B-8.15, which provides:
Sales or use of wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, nonreturnable containers, reusable milk containers and all other wrapping supplies when such use is incidental to the delivery of any personal property are exempt from the tax imposed under the Sales and Use Tax Act.
As stated above, exemption statutes must be strictly construed, and the burden is on the taxpayer to establish entitlement to exemption.
*159 Section 8.15 exempts the purchase of wrapping supplies when their use is incidental to the delivery of personal property. It might be argued that § 8.15 deals with a single transaction requiring that the wrapping supplies, when purchased, be incidental to the delivery of property. Is the sale of an empty carton exempt, or must the sale be of the carton together with the product inside? The words “such use” in § 8.15 refer to the prior word “use” at the beginning of the section. The definition of “use” for purposes of the Sales and Use Tax Act encompasses both the receiving of the wrapping supplies and their future employment. N.J.S.A. 54:32B-2(h). The reference to “such use” includes both the initial transaction (purchase of the supplies) and future employment of the supplies in a second transaction (packing and loading services). The Director has accepted this two-transaction analysis in oral argument in this case and also in Logistics Industries v. Taxation Div. Director, 2 N.J.Tax 484, 488 (Tax Ct. 1981), in which the court stated that the Director conceded that the manufacturer’s sale of an empty, finished box to its customer is exempt under § 8.15.
The phrasing of the statute “[sjales or use of ... wrapping supplies when such use is incidental to the delivery of any personal property” compels the court to look at the first and second transactions to determine whether the purchase of wrapping supplies is exempt under this statute. The court must find that the materials purchased in the first transaction are wrapping supplies. If these materials are then used in the second transaction incidental to the delivery of any personal property, the purchase in the first transaction is exempt.

A.

Are The Chocking Materials Wrapping Supplies?

To be entitled to exemption under § 8.15 the chocking materials must be twine, tape, rope or fall within the category of “all other wrapping supplies.” Wrap means to envelop and secure for protection or convenience in transportation or storage. Webster’s Third New International Dictionary (1981) at 2638.
*160 In Spencer Gifts, Inc. v. Taxation Div. Director, 182 N.J.Super. 179, 3 N.J.Tax 482, 440 A.2d 104 (Tax Ct 1981), the court was called on to determine whether catalog wrappers were exempt wrapping supplies. The court stated that wrapping supplies referred to in § 8.15 were those which contain or hold property to facilitate its transportation, regardless of the physical characteristics of the wrapping materials. Id. 3 N.J.Tax at 493. The court held that catalog wrappers were not wrapping supplies because they were used as advertisements, not to facilitate distribution of the catalogs through the mail. The court in Spencer Gifts based its holding on a review of Pennsylvania and Ohio wrapping-supply cases.
The wrapping-supply exemption in Pennsylvania, 72 Pa.Code § 7204(13), contains similar language to § 8.15.[2] In Commonwealth v. Yorktowne Paper Mills, Inc., 426 Pa. 18, 231 A.2d 287 (Pa.Sup.Ct.1967), the Pennsylvania Supreme Court held that lumber, nails and metal bands, used to construct pallets, were wrapping supplies exempt from sales and use tax. The pallets were used in transporting large rolls of paper. Metal bands were wrapped around the rolls of paper and the pallets to secure the rolls of paper. The court interpreted the term “wrapping supplies” broadly, stating that the exemption covered “all wrapping materials, of whatever nature or form, so long as the materials were in fact used to provide a container for the purpose of facilitating delivery of the ... product. The purpose served and not the exact type of material employed was intended to govern.” Id. at 231 A.2d at 289-290. The court found that the pallets and metal bands were the type of wrapping supplies to which the product lent itself.
*161 In Custom Beverage Packers, Inc. v. Kosydar, 33 Ohio St.2d 68, 294 N.E.2d 672 (Ohio Sup.Ct.1973), the Ohio Supreme Court held that unbound pallets used to transport cases of soft drinks were taxable. Although the court stated that the wrapping need not fully enclose the items, it held that the wrapping must contain the item and restrain its movement in more than one plane. The unbound pallets were only platforms on which the cases rested.
In the subject case, chocking materials are used for two purposes: (1) to secure and protect property inside the cargo containers while in transit, and (2) to surround or divide containers in the hold of the vessel. Additionally, some of the chocking materials are reusable. The chocking materials do not in themselves contain or envelop the property, but used in conjunction with the containers, provide a wrapping for the property being transported. Chocking materials are the type of wrapping supplies necessary to secure large items inside cargo containers, just as excelsior, corrugated paper or styrofoam is used to hold and protect products packed in cardboard boxes for shipping. The container and the chocking materials together contain and hold the property.
The chocking materials used outside the containers as dividers in the hold of the ship are not wrapping supplies. They are used as shoring to stabilize the containers in the hold of the ship. These chocking materials do not contain or hold the contents of the containers, the tangible personal property.
Chocking used inside the containers includes reusable and nonreusable materials. I find that chocking materials that are reusable are nonexempt wrapping supplies. The intention of the Legislature to limit the exemption to nonreusable wrapping materials is made clear by the specific inclusion in the statute of reusable milk containers, an obvious exception to the general exemption.
I find that to the extent chocking materials can be identified as nonreusable wrapping supplies that are used inside containers to secure and protect tangible personal property, their *162 purchase is exempt from sales and use taxation if they are used incidentally to the delivery of tangible personal property.

B.

Are The Nonreusable Chocking Materials Used Incidentally To The Delivery of Property?

The Director argues and has consistently argued in previous cases that § 8.15 only exempts wrapping supplies when their use is incidental to the sale of personal property. He has argued that the Legislature intended “sale” when it said “delivery.” See Spencer Gifts, supra; Hoffman-LaRoche v. Taxation Div. Director, 5 N.J.Tax 154 (Tax Ct. 1983), rev’d 192 N.J.Super. 552, 471 A.2d 786 (App.Div.1983).
In the absence of an explicit indication of special meaning, words of a statute are to be given their ordinary and well-understood meaning. Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 411 A.2d 704 (1980); Renz v. Penn Cent. Corp., 87 N.J. 437, 435 A.2d 540 (1981). There is a lack of legislative history in connection with the enactment of the Sales and Use Tax Act, N.J.Bell Tel. v. Taxation Div. Director, 152 N.J.Super. 442, 447, 378 A.2d 38 (App.Div.1977), and in particular no legislative history concerning the use of the word “delivery” in § 8.15. The statute itself gives no indication that the word “delivery” is to be given a meaning other than its ordinary and well-understood meaning.
Delivery is defined as:
1: a delivering from restraint: rescue, 2a: the act of delivering up or over: transfer of the body or substance of a thing, b: the physical and legal transfer of a shipment from consignor to carrier, between carriers, and from transport agency to consignee. [Webster’s Third New International Dictionary (1981) at 597]
As defined, delivery is not limited to transactions involving a sale. Therefore, the exemption under § 8.15 is not limited to wrapping supplies used incidentally to the sale of personal property. This is in substantial agreement with the Tax Court opinion in Hoffman-LaRoche, reversed on other grounds, *163 where Judge Andrew found that the Division of Taxation had “shown no persuasive support for its assertion that the exemption for mailing labels provided by § 8.15 was intended to apply only when the labels are used incidentally to a sale of personal property.” Hoffman-LaRoche, supra, 5 N.J.Tax at 171.
Further support can be found by comparing § 8.15 to the wrapping-supplies exemption enacted as part of New York’s sales tax act. N.Y.Tax Law § 1115(a)(19) (McKinney 1975) provides an exemption for:
[c]artons, containers, and wrapping and packing materials and supplies, and components thereof for use and consumption by a vendor in packaging or packing tangible personal property for sale, and actually transferred by the vendor to the purchaser. [Emphasis supplied]
The New Jersey Legislature based its § 8 exemptions, at least in part, on § 1115 of the New York sales tax act. N.J. Bell Tel. v. Taxation Div. Director, supra, 152 N.J.Super. at 451, 378 A.2d 38 (Horn, J. concurring). However, New Jersey did not adopt the language of the New York exemption for wrapping supplies, which limited the exemption to wrapping supplies used in connection with the sale of property. It appears that the wording of the Pennsylvania statute was adopted instead. By not including the “sale” language, the Legislature demonstrated its intent to provide a broader exemption for wrapping supplies. It is noteworthy that other states have enacted statutes which specifically limit the exemption to wrapping supplies used incidentally to the sale of property.[3]
*164 The issue is whether § 8.15 was intended to exempt the purchase of wrapping supplies by Global, which uses them in providing stevedoring services. As defined above, delivery means the act of transferring items, and specifically refers to the transfer of goods to a carrier. Global’s services are delivery services since they involve packing of property into containers and loading these containers onto ocean carriers. The chocking materials purchased by Global are necessary for the protection of the property being packed and loaded. The use of the chocking materials is incidental to the delivery of property and therefore is within the exemption created by § 8.15.
The remaining issue is whether the first transaction, the purchase of chocking materials by Global, is exempt even though charges for the second transaction, the stevedoring services in which the chocking materials are used, are exempt from tax.
The wrapping-supplies exemptions in other states, which are limited to wrapping supplies used in connection with a sale of property, are based on a sale-for-resale rationale. Under those exemptions, the first transaction is exempt because the second transaction, the sale of the property, is taxed and the cost of the wrapping supplies is included in the sale price. See All-State Sales Tax Reporter (CCH) ¶ 4-150.
Since § 8.15 uses “delivery” instead of “sale,” it is a broader exemption, not enacted on a sale-for-resale basis. Therefore, the sale-for-resale rationale does not apply. Section 8.15 complements § 8.11. Read together, these two sections indicate a legislative intent to exempt both the purchase of wrapping supplies used incidentally to the delivery of personal property, the first transaction, and the charges for transportation services for which the wrapping supplies are used, the second trans *165 action. Unlike a sale-for-resale exemption, both transactions are exempt from tax.
I find that the nonreusable chocking materials used inside containers to secure and protect tangible personal property are incidental to the delivery of property by container ship, and therefore Global’s purchases of such chocking materials are exempt from taxation under § 8.15. The proper assessment for the nonexempt chocking materials shall be determined pursuant to R. 8:9-3 in accordance with the foregoing, and when determined, the Clerk of the Tax Court is directed to enter judgment affirming the Director’s deficiency tax assessment on storage charges under N.J.S.A. 54:32B-3(b)(3), and setting aside the tax assessment on the nonreusable wrapping supplies exempt under N.J.S.A. 54:32B-8.15.

Charges for storage of empty containers in independent storage yards are not in issue in this case.

 72 Pa.Code § 7204(13) exempts:
The sale at retail, or use of wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, nonreturnable containers and all other wrapping supplies, when such use is incidental to the delivery of any personal property, except that any charge for wrapping or packaging shall be subject to tax at the rate imposed by section 202.

For example, Mass.Gen.Laws Ann. ch. 64H, § 6(q)(1) exempts:
Sales of both returnable and nonreturnable containers when sold without the contents [to persons who place the contents in the container and sell the contents] together with the container; (2) containers when sold with the contents if the sale price of the contents is not required to be included in the measure of the taxes imposed by this chapter; (3) returnable containers when sold with the contents or resold for refilling.
Cal.Rev. & Tax.Code § 6364 provides:
There are exempted from the taxes imposed by this part, the gross receipts from sales of and the storage, use, or other consumption in this State of:
(a) Nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container.
*164 (b) Containers when sold with the contents if the sale price of the contents is not required to be included in the measure of the taxes imposed by this part.
(c) Returnable containers when sold with the contents in connection with a retail sale of the contents or when resold for refilling.