KUSKIN, J.T.C.
Plaintiff Quest Diagnostics, Inc. appeals the denial by defendant Director of the New Jersey Division of Taxation (Director) of plaintiffs refund claim as to $1,073,232 of sales tax paid for the period April 1, 1996 to December 31, 2000. The tax related to plaintiffs purchases of vacutainers (small test tubes sealed with stoppers and used to collect human blood specimens). Plaintiff contends that the vacutainers are wrapping supplies exempt from tax under N.J.S.A. 54:32B-8.15, a provision of the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -53. The Director has moved for summary judgment dismissing the appeal. For the reasons set *486 forth below, I conclude that plaintiffs purchases are not eligible for exemption and grant the Director’s motion.
Plaintiff operates a laboratory in which it performs testing of human blood and other body fluids and generates written reports containing the results of the tests. See Metpath, Inc. v. Director, Div. of Taxation, 96 N.J. 147, 150, 474 A.2d 1065 (1984) (describing the laboratory testing services of Metpath, Inc., plaintiffs predecessor in interest).[1] The tests must be ordered by physicians. Plaintiff will not perform a test upon request by a patient or other non-physician. The blood and other fluids to be tested are collected in vacutainers or similar devices at offices of physicians- or at facilities operated by plaintiff and delivered to plaintiffs laboratory.
Two sizes of vacutainers are in issue, one contains a chemical anticoagulant and the other contains a chemical clot activator. Plaintiff purchased all of the vacutainers from Becton Dickinson and Company which shipped them to plaintiff in sealed packages. Neither plaintiffs name nor any other identification of plaintiff appeared on the packages or the vacutainers. The label on each package identified the contents as “BD Vaeutainer — Blood Collection Tubes.” In his certification submitted in opposition to the Director’s motion, plaintiffs Director of Lab Operations described the vacutainers as “non-proprietary” and as being “the same or similar tubes used by other testing firms, such as Lab Corp.” Plaintiffs Area Sales Director stated as follows in his certification:
Quest Diagnostic competitors use either the same or similar vaccutainer [sic] collection devices as those obtained by Quest from Becton Dickinson. Many physicians use multiple laboratories since different insurance companies require different clinical laboratories perform their insured’s testing. Quest Diagnostics, Inc., on a daily basis, does receive and will accept vacutainers used by other laboratories or made by other manufacturers and as such will perform the testing on the specimen provided.
Plaintiff markets its laboratory testing services to physicians through sales representatives. Once a physician agrees to use *487 plaintiffs services (not necessarily exclusively), plaintiff then provides to the physician, without charge, a supply of vacutainers and a courier box in which the containers can be placed for pick-up by plaintiff. Supplying physicians with vacutainers for placement of blood specimens is a general practice of laboratory companies. In his deposition, plaintiffs Area Sales Director described vacutain-ers as a standard supply that physicians expect to receive and stated that: “[0]ur belief is, if we weren’t to provide them, our competition would, and we would lose business.”
A physician’s certification submitted by plaintiff confirms the foregoing statements by plaintiffs employees. The physician notes that the laboratory to be used for a test generally is determined initially by the insurance carrier for the patient, and, if the insurance carrier does not require that a particular laboratory be used, the physician will select a laboratory based on “my professional experience with the type of test required and the accuracy and timeliness of the clinical laboratory’s return of results or in some cases, a patient’s direct request.” The physician stated that, in drawing blood prior to submitting it to a laboratory for testing, he would use a vacutainer provided by plaintiff or by another laboratory company. In this regard, the physician certified as follows:
The determination of which testing laboratory to use has no bearing on the supplies sent to my office from the clinical laboratory, rather the supplying of vaecutainers [sic] is a convenience to my office and the patient. The vaccutainers [sic] have no other use but for blood collection and no vaccutainers [sic] are returned to this office after they have been used for specimen collection.
The cost of the laboratory testing performed by plaintiff is borne by the patient and not by the physician. Once the testing is completed, the blood and the vacutainer are destroyed pursuant to state and federal law because they constitute biohazardous waste. The test results are transmitted to the physician, and, if the patient specifically requests, to the patient as well, and a bill is sent to the patient or the patient’s insurance carrier.
The statute under which plaintiff seeks exemption from sales tax, N.J.S.A. 54:32B-8.15, provides in pertinent part as follows:
*488 Sales or use of wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, nonretarnable containers, reusable milk containers, and all other wrapping supplies when such use is incidental to the delivery of any personal property... are exempt from the tax imposed under the Sales and Use Tax Act.
[N.J.S.A. 54:32B-8.15.]
The Director contends that plaintiffs vacutainer purchases do not qualify for exemption for the following reasons:
1) the vacutainers are not wrapping supplies as defined in the statute because, as used by plaintiff, they are returnable containers. The Director asserts that plaintiff uses the vacutainers as a marketing device with the express intention that, after use to collect blood specimens, the vacutainers be returned to plaintiff for testing purposes. The Director also asserts that physicians can return unused vacutainers to plaintiff; and
2) plaintiff does not use the vacutainers incidental to the delivery of any personal property as required by the statute, because it delivers the vacutainers to physicians empty except for the anticoagulant or clot activator chemicals placed by the manufacturer in the vacutainers prior to shipment to plaintiff.
The Director’s arguments implicitly assume that qualification for exemption should be determined by examining only the transactions between plaintiff and physicians. Plaintiff, however, contends that the returnability and use of the vacutainers must be determined by considering not only their delivery to physicians but also their use by the physicians, as facilitators for plaintiff, to collect blood specimens and deliver the specimens to plaintiff for testing, and plaintiffs destruction of the emptied vacutainers. Plaintiff asserts that, when viewed in this fashion, the vacutainers satisfy the statutory criteria of “nonreturnable containers” used “incidental to the delivery of any personal property.”
Reported decisional law interpreting N.J.S.A. 54:32B-8.15 comprises four cases: Global Terminal & Container Servs., Inc. v. New Jersey Div. of Taxation, 9 N.J.Tax 152 (Tax 1987); Logistics Indus. Corp. v. Director, Div. of Taxation, 2 N.J.Tax 484 (Tax 1981); Spencer Gifts, Inc. v. Director, Div. of Taxation, 182 N.J.Super. 179, 3 N.J.Tax 482, 440 A.2d 104 (Tax 1981); Hoffman-LaRoche, Inc. v. Director, Div. of Taxation, 5 N.J.Tax 154 (Tax) reversed in part, 192 N.J.Super. 552, 471 A.2d 786 (App.Div. 1983). Of these, Global Terminal is the decision most relevant to the issues before me. There, the Tax Court confronted the issue of whether chocking materials, consisting of packing materials such as lumber, dunnage bags, strapping, and shoring bars, quali *489 fied for exemption as wrapping supplies under the statute. These materials were used to secure and protect cargo inside twenty or forty foot long containers before the containers were loaded on ships for transport by sea, or were used outside the containers as dividers.
Judge Lasser held that the language of N.J.S.A. 54:32B-8.15 requires a two-transaction analysis in order to determine qualification for exemption. The first transaction to be considered is the purchase of the materials in issue, and the second is the use of the materials by the purchaser.
The phrasing of the statute “[s]ales or use of ... wrapping supplies when such use is incidental to the delivery of any personal property” compels the court to look at the first and second transactions to determine whether the purchase of wrapping supplies is exempt under this statute. The court must find that the materials purchased in the first transaction are wrapping supplies. If these materials are then used in the second transaction incidental to the delivery of any personal property, the purchase in the first transaction is exempt.
[Id. at 159.]
In holding that the chocking materials used inside the containers were wrapping supplies qualifying for exemption and that the materials used outside the containers as dividers did not qualify, Judge Lasser reached three legal conclusions of significance to plaintiffs contentions in the matter now before me. First, he concluded that the dictionary definition of “wrap” should be employed for purposes of construing N.J.S.A. 54:32B-8.15 and, therefore, interpreted that term to mean “to envelop and secure for protection or convenience in transportation or storage.” Id. at 159 (citation omitted). Second, he concluded that, in order to qualify for exemption, the wrapping materials must be nonreusable. Id. at 161. Third, he concluded that the use of the materials need not be in connection with a sale of personal property but only in connection with the delivery of personal property. Id. at 162-63. Consequently, although Global Terminal & Container Services, Inc. was not the owner of the personal property being delivered, it used the wrapping supplies incidental to the delivery of personal property. Id. at 164.
Plaintiff contends that its purchases of vacutainers qualify for exemption under the Global Terminal analysis. As to the first *490 transaction, plaintiff asserts that the vacutainers are wrapping supplies as defined by Judge Lasser, and are nonreusable because plaintiff empties and destroys them after receipt from physicians. As to the second transaction, plaintiff asserts that the vacutainers are used incidental to the delivery of personal property, namely, the delivery of blood specimens from physicians to plaintiff or to another laboratory.
The general legal principles applicable to a claim of exemption from tax are well-settled. One is that an assessment of sales or use tax is presumptively correct. See Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146, 95 A.2d 895 (1953); H.J. Bradley, Inc. v. Director, Div. of Taxation, 4 N.J.Tax 213, 229 (Tax 1982). A second is that “where the taxpayer ... urge[s] exclusion from the scope of the taxing statute, ‘the probable legislative intent is one of inclusion and exemptions are to be construed narrowly.’ ” Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 319-20, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (citation omitted). See also N.J.S.A. 54:32B-12(b) (establishing an express presumption that sales and use tax is payable). A third principle is that tax exemptions are “strictly construed because an exemption from taxation is a departure from the equitable principle that everyone should bear his just and equal share of the public tax burden.” Phelps Dodge Indus., Inc. v. Director, Div. of Taxation, 8 N.J.Tax 354, 358 (Tax 1986).
As a preface to applying the foregoing general principles and analyzing the arguments of the parties, I make the following findings:
1) the vacutainers are “containers” as that term is used in N.J.S.A. 54:32B-8.15;
2) plaintiff distributes the vacutainers to physicians free-of-charge in order to be competitive in the market, thereby inducing or encouraging physicians to use plaintiffs testing services;
3) physicians can return to plaintiff unused vacutainers in their original packaging;
4) when plaintiff receives the vacutainers and provides them to physicians, the vacutainers are empty (except for anti-coagulants or clot activator chemicals placed in them by the manufacturer) and do not identify plaintiff in any manner;
5) competitors of plaintiff provide identical vacutainers, or similar devices, to physicians;
*491 6) blood specimens placed in the vaeutainers constitute personal property;
7) a physician may send a vacutainer supplied by plaintiff to plaintiff or to another laboratory for testing of a blood specimen, and may send a vacutainer supplied by another laboratory to that laboratory or to plaintiff for testing of a blood specimen; and
8) plaintiff destroys all returned vaeutainers containing blood specimens.
In order to determine, based on these findings, whether plaintiffs purchases of vacutainers are exempt from sales tax under N.J.S.A. 54:32B-8.15 as interpreted in Global Terminal, supra, 9 N.J.Tax 152, I first must resolve the issue of whether the nonreturnability and use of the vacutainers should be evaluated based on plaintiffs providing of vacutainers to physicians or based on a broader view encompassing the return of the vacutainers to plaintiff containing blood specimens. The Sales and Use Tax Act defines “use” in pertinent part as follows:
The exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or any keeping or retention for any length of time, withdrawal from storage, any distribution, any installation, any affixation to real or personal property, or any consumption of such property.
[N.J.S.A. 54:32B-2(h).]
Under this definition, the receipt of vaeutainers by plaintiff from Becton Dickinson and Company was a “use,” as was plaintiffs exercise of power and control over the vaeutainers in selecting the physicians to whom they were sent and determining the quantities sent and time and the method of delivery. See Hoffman-La-Roche, Inc. v. Director, Div. of Taxation, supra, 5 N.J.Tax 154 (holding that the taxpayer exercised power and control over advertising and promotional materials purchased by it from an out-of-state printer, and sent by the printer to a New Jersey direct mailing house for mailing primarily outside of New Jersey, because the taxpayer had a right to approve the materials before mailing). For the period September 4, 1998 (when the phrase “any distribution” was added to the definition of “use” by L. 1998, c. 99, § 1) through December 31, 2000, plaintiffs delivery of vaeutainers to physicians was a “use” under the statutory definition because the delivery constituted “distribution” of the vacu-tainers.
*492 The exemption set forth in N.J.S.A. 54:32B-8.15 applies to the “[s]ales or use” of wrapping supplies when “such use” is incidental to delivery of personal property. I interpret this language, when read together with the definition of use in N.J.S.A. 54:32B-2(h), to mean that the determination of whether the vacutainers are wrapping supplies and whether they are used “incidental to the delivery of any personal property” must be made based on plaintiffs use of the vacutainers and not based on their subsequent use by physicians to collect blood specimens followed by destruction of emptied vacutainers at plaintiffs laboratory.
Under the preceding analysis, plaintiffs purchases of vacutain-ers do not qualify for exemption under N.J.S.A. 54:32B-8.15 because the vacutainers, as used by plaintiff, are returnable and do not function incidental to the delivery of blood specimens. It is undisputed that physicians could return unused vacutainers to plaintiff in their original packaging. In any event, plaintiffs sole purpose in providing the vacutainers to physicians was to induce them to return the filled vacutainers to plaintiff for testing. Therefore, at the time of their use by plaintiff, the vacutainers were in all respects returnable and did not qualify as wrapping supplies. I note that, because the vacutainers are containers, they could not qualify for exemption under the reference in the statute to “all other wrapping supplies.” The express statutory requirement that containers be nonreturnable in order to qualify for exemption would be rendered meaningless if returnable containers could qualify under the catch-all category of “other wrapping supplies.”
Even if I were to determine that the vacutainers qualified as wrapping supplies, plaintiffs purchases would not qualify for exemption because, in the second transaction described in Global Terminal, plaintiff did not use the vacutainers incidental to the delivery of personal property. As described above, plaintiff delivered the vacutainers to physicians empty except for the anticoagulant or clot activator chemicals placed in them by the manufacturer. Plaintiff does not contend that the vacutainers are used to deliver these chemicals. Plaintiff asserts that the delivery of personal property occurs when the vacutainers are returned from *493 the physician to plaintiff or to another laboratory filled with a blood specimen. That use of the vacutainers is not plaintiffs use. It is the use by the physician and cannot be imputed to plaintiff. Plaintiff asserts that physicians merely facilitate the use of the vacutainers and are not separate or independent users of them. However, because distribution of the vacutainers to the physicians is, in itself, a use, the second use of the containers by physicians to place blood specimens in them is separate and independent and cannot constitute a use by plaintiff for purposes of qualifying for exemption under N.J.S.A. 54:32B-8.15.
Plaintiffs argument that it uses the vacutainers incidental to the delivery of personal property also fails because the argument assumes, contrary to the facts established by plaintiff, that physicians will return to plaintiff, for testing of blood specimens, all vacutainers supplied by it. Plaintiff argues that it satisfies the “incidental use” requirement of the statute because, when it purchases the vacutainers, their return to it, filled with blood specimens for testing, reliably can be anticipated. Plaintiff analogizes its purchases to a manufacturer’s purchases of boxes for use in delivery of the manufacturer’s products, where the use of the boxes incidental to the delivery of personal property also reliably can be anticipated.
Plaintiffs argument ignores a significant distinction between the manufacturer and plaintiff. The manufacturer itself fills the boxes with its product and uses the boxes to deliver personal property. Plaintiff itself does not place anything in the vacutainers, but relies on physicians to fill them with blood specimens for delivery to plaintiff for testing. As established by certifications submitted by plaintiff and quoted above, competitors of plaintiff provide vacutainers the same as or similar to those provided by plaintiff. A physician has no basis for identifying or segregating plaintiffs vacutainers from the identical or similar product provided by another laboratory. Vacutainers provided by plaintiff can be sent to other laboratories, just as vacutainers provided by a competitor can be sent to plaintiff. Therefore, it is impossible to trace the actual use of any vacutainer and determine whether it has in fact been used by a physician as a “facilitator” for plaintiff in obtaining *494 blood specimens and returning them to plaintiff. No reasonable certainty exists that physicians -will return plaintiffs vacutainers to it. A physician’s use of one of plaintiffs vacutainers to deliver blood specimens to a laboratory other than plaintiff would not constitute a use by the physician as a facilitator for plaintiff. Plaintiff earns revenue only from the performance of testing, and plaintiff would have no reason to sanction the use of containers supplied by it for delivery of blood specimens to another laboratory. Thus, a use of a vacutainer provided by plaintiff for delivery of a blood specimen to another laboratory is not a use by, or attributable to, plaintiff.
Another difficulty inherent in plaintiffs contentions is that they describe a use of the vacutainers to deliver personal property from plaintiff to itself. This occurs not only when plaintiff uses vacu-tainers at its own facilities for collection of blood specimens and then transfers the filled vacutainers from the collection facility to its laboratory, but also when independent physicians use the vacutainers for the collection of blood specimens and return the vacutainers to plaintiff.
I conclude that the use of wrapping supplies to deliver tangible personal property to oneself is not the type of use envisioned by the Legislature in enacting N.J.S.A. 54:32B-8.15 or by the analysis in Global Terminal, supra, 9 N.J.Tax 152. The statutory reference to the use of wrapping supplies “incidental to the delivery of any personal property” refers to a delivery to a third party while the tangible personal property remains enclosed in the wrapping supplies.[2] The statute does not confer an exemption where the ultimate destination of the tangible personal property and, therefore, the wrapping supplies, is the purchaser and initial *495 user of the wrapping supplies. This interpretation is consistent with the Assembly Appropriation Committee Statements to the Senate Committee Substitute for S. 1825 and the Assembly Committee Substitute for A.2925, both dated October 18, 1999. These bills, enacted as L. 1999, c. 314, amended N.J.S.A. 54:32-8.15 to add an exemption for “containers for use in a farming enterprise.” The Committee Reports comment that, under the statute before amendment, “containers that are not for transfer to a purchaser are taxable.” Cf. Paper Prod. Co. v. City of Pittsburgh, 183 Pa.Super. 234, 130 A.2d 219 (1957), aff'd 391 Pa. 87, 137 A.2d 253 (1958) (stating that the Pennsylvania statute exempting wrapping supplies from sales and use tax (containing language very similar to N.J.S.A. 54:32B-8.15) was based on a preceding administrative regulation that sales of wrapping supplies essential to the delivery of a product by the purchaser were exempt from tax as sales for the purpose of resale.)[3]
Based on the preceding analysis, I conclude that there is no genuine dispute as to any material facts and that defendant is entitled to summary judgment as a matter of law. R. 4:46 — 2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995). Accordingly, I grant defendant’s motion for summary judgment.

 On November 6, 1996, Metpath, Inc. merged into Corning Clinical Laboratories Inc. which simultaneously changed its name to Quest Diagnostics Incorporated.

 Purchases of envelopes and other wrappers by entities such as Federal Express and UPS are treated by the Director as qualifying for exemption under N.J.S.A. 54:32B-8.15. These purchases are distinguishable from plaintiff's purchases of vacutainers. Although Federal Express or UPS will deliver a supply of empty envelopes to customers free-of-charge, and the customers place personal property in the envelopes and return them to Federal Express or UPS, the envelopes, as returned, are then used to deliver the enclosed personal property to third parties.

 In Global Terminal, supra, 9 N.J.Tax 152, 160, Judge Lasser relied on a Pennsylvania court's interpretation of the Pennsylvania statute as authority for interpreting the New Jersey statute.