NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**JONATHAN A. ORSEN**
JUDGE

Essex County Dr. Martin Luther King, Jr. Justice
Building 495 Martin Luther King Blvd. - Fourth Floor
Newark, New Jersey 07102-0690
(609) 815-2922 Ext. 54600
Fax: (973) 424-2424

October 28, 2021

Scott H. Novak, Esq.
Post Polak, P.A.
425 Eagle Rock Avenue
Suite 200
Roseland, New Jersey 07068-1717

Heather Lynn Anderson, Esq.
Office of the Attorney General
Division of Law
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625

Re: **Watchung Liquors, Inc. v. Director, Division of Taxation**
Docket No. 013014-2017

Dear Counsel:

This letter constitutes the court's decision of defendant's summary judgment motion in the above matter. Defendant, Director, Division of Taxation (the "Division") moves for summary judgment claiming that it properly assessed additional tax, interest, and penalties on plaintiff, Watchung Liquors, Inc., for the audit period January 1, 2008 through March 31, 2012. The Division argued that plaintiff failed to maintain and provide adequate books and records, which authorized the Division to use the mark-on methodology to reconstruct plaintiff's gross sales in order to calculate plaintiff's tax liability, and that plaintiff allegedly approved of the 1.35 mark-on ratio that the Division used. Plaintiff argued that it never agreed to the use of that mark-on ratio, and in any event, it can produce evidence to overcome the presumption of correctness and disprove the reasonableness of the 1.35 mark-on ratio.






For the reasons stated more fully below, the court finds that plaintiff has provided meritorious opposition to show that there are material facts in genuine dispute regarding the correctness of the Division's final determinations. As such, the court denies defendant's motion for summary judgment.

**FACTS**

All of the facts herein are based on the certifications in the moving papers, which comprise of the information gathered by the Division during the audit process and plaintiff's responses.

Watchung Liquors, Inc. is an S-corporation that operates a medium-sized liquor store in North Plainfield, New Jersey. The store sells beer, wine, liquor, tobacco products, chips, soda, juice, water, lottery tickets, and telephone cards. It is open seven days a week from 10:00 a.m. to 10:00 p.m., except Sunday, when it opens at 1:00 p.m. No prices are displayed to customers in the store. The business is cash-only and rarely makes any bank deposits. Its suppliers and employees are paid in cash.

The plaintiff was audited for the period January 1, 2008 through March 31, 2012. The auditor for the Division met with plaintiff's president to complete the pre-audit questionnaire. Plaintiff provided partial purchase and expense invoices for 2010 and bank statements for 2011. Plaintiff also referred the auditor to its accountant, who provided a copy of plaintiff's CBT-S tax return for 2011, copies of the NJ W-2s and W-3s for 2009 through 2010, copies of plaintiff's 1120 tax returns for 2008 through 2011, a typed sales journal, and purchase invoices for April 1, 2012 through June 30, 2012. The auditor noted that neither plaintiff nor its accountant provided bank statements for 2008 through 2010, cancelled checks for 2010, a purchase journal, some purchase invoices for 2010, a computerized sales journal, any trial balances or general ledgers, or any detailed or summary register tapes. As set forth in the auditor's certification and corresponding

2

audit report, the auditor stated that the mark-on method was necessary. However, the auditor stated that it was not possible to use the traditional mark-on method because the plaintiff's selling prices were not available.

Therefore, the auditor formulated a mark-on figure by first obtaining third-party alcohol purchase information from the Division of Alcoholic Beverage Control and comparing that information to the alcohol purchase invoices provided by plaintiff. The auditor categorized the invoices by distributor and product type. For each category, the auditor totaled both plaintiff's invoices and the third-party invoices, if available,[1] then took the higher amount as the audited purchases for each category, unless the two totals were within 10% of each other, in which case the auditor took the lower amount. The auditor found that in 2010, 2.29% of purchases were of non-alcoholic non-taxable goods, and 1.89% were of non-alcoholic taxable goods, and applied these ratios to estimate those purchases for 2008, 2009, and 2011, because invoices were not available for those purchases for those years. The auditor then totaled the accepted purchases for each category and determined audited purchases of $485,473, $436,961, $377,588, and $291,539 for 2008, 2009, 2010, and 2011, respectively. The auditor compared these totals with the reported purchases of $428,976, $415,000, $354,938, and $254,756 for each respective year, and determined the error percentages for the given years. The auditor accepted the reported purchases for 2009 and 2010 as their error percentages were less than 10% but rejected the reported purchases for 2008 and 2011 and used the third-party purchase totals instead for those years. The auditor then took the total purchases for each year and reduced them by 3% to account for spoilage, theft, waste, giveaways, discounts, personal usage, and other losses.

---

[1] The auditor was not able to obtain third-party purchase information for any non-alcoholic purchases except from Festival Ice Cream and Beverage Works.

Without determining the actual mark-on for any of the products sold by the liquor store, the auditor then multiplied the reduced purchase totals by an estimated 1.35 mark-on ratio to determine audited taxable gross receipts. The Division alleges — and plaintiff contests — that plaintiff approved of the 1.35 mark-on ratio. The Division also provided an income statement for each year under audit showing that plaintiff's reported mark-on ratios for 2008 through 2011 were 1.36, 1.35, 1.40, and 1.24 based on its CBT-100S returns. The auditor ultimately determined to use the 1.35 ratio for all years to determine audited taxable gross receipts of $621,752, $521,705, $446,199, and $373,376. From these audited receipts, the auditor applied a 7% sales tax rate, then subtracted the sales tax remitted via plaintiff's ST-50 returns, to determine the sales tax plaintiff still owed for each year. The auditor also calculated the estimated sales tax plaintiff owed for the first quarter of 2012. In total, the auditor determined that plaintiff owed an additional $52,932.95 in Sales and Use Tax over the audit period under N.J.S.A. 54:32B-19.

The auditor also estimated additional Gross Income Tax – Employer Withholding ("GIT-ER") due because plaintiff admitted that plaintiff's president's relatives and girlfriend worked at the store part time and were paid in cash without withholding. Plaintiff estimated that the additional wages were 10% of gross receipts in each year. The auditor used the audited receipts to determine additional GIT-ER withholding due of $2,367.13 over the audit period under N.J.S.A. 54:10A-6. Finally, the auditor noted that plaintiff never reported or paid litter tax during the audit period. The auditor used the audited receipts to determine litter tax due of $663.84 for the audit period.

On December 13, 2012, the Division issued its Notice of Assessment Related to Final Audit Determination assessing $66,857.05 in Sales and Use Tax due, $2,809.81 in GIT-ER due, and $1,010.66 in litter tax due, including penalties and interest calculated to January 2013.

4

On November 13, 2013, plaintiff filed an administrative protest against the audit disputing the assessed taxes due of plaintiff. On May 16, 2017, the Division's conferee, held an administrative conference with plaintiff's representative. Plaintiff objected to the mark-on ratio and claimed it was too high for industry standards. On June 20, 2017, plaintiff sent a proposal to the conferee showing a mark-on ratio of 1.17 which computed to an offer of $6,660.00 to settle the matter. The Division rejected this offer. The conferee agreed with the audit report and upheld the assessment, calculating $88,382.01 due as of August 20, 2017. On June 26, 2017, the Division sent its Final Determination showing such amount due.

On September 19, 2017, plaintiff timely filed a complaint with the Tax Court contesting the tax assessment and alleging that a 1.17–1.20 mark-on ratio would be appropriate. Subsequently, the Division filed a motion for summary judgment. The Division argued that its motion should be granted as plaintiff had allegedly failed to provide adequate books and records, and that its determinations were entitled to a presumption of correctness. Plaintiff did not object to the use of the mark-up methodology in general but countered that it never "approved" the use of a 1.35 mark-on ratio, and that such a ratio is "wildly incorrect" and could be rebutted to overcome the presumption of correctness. Plaintiff offered a letter from a CPA who alleges that liquor stores generally see a 17–20% gross profit percentage, which would result in a 1.17–1.20 mark-on ratio, and the letter from its representative arguing for a 17% gross profit percentage following the conference with the Division. Plaintiff also provided the calculations to determine this gross profit margin. Finally, plaintiff's president certified that he never agreed, approved, or authorized anyone on plaintiff's behalf to approve the use of the 1.35 mark-on ratio. Oral argument was held.

5

**DISCUSSION**

In order to determine whether summary judgment is appropriate at this juncture, the court must determine whether there exists a disputed material fact concerning the defendant's audit.

In Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 20 (1995), the New Jersey Supreme Court articulated the summary judgment standard as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the nonmoving party.
>
> [Brill, 142 N.J. at 523.]

"Furthermore, 'the court must accept as true all evidence which supports the position of the party defending against the motion and must accord him (or her) the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.'" Alpha I, Inc. v. Dir., Div. of Taxation, 19 N.J. Tax 53, 56 (Tax 2000) (citing Brill, 142 N.J. at 535).

Additionally, Brill also provided that,

> By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion *only* where the party opposing the motion has come forward with evidence that creates a "genuine issue as to any material fact challenged." That means a non-moving party cannot defeat a motion for summary judgment merely by pointing to *any* fact in dispute.
>
> [Brill, 142 N.J. at 529.]

In fact, disposition by summary judgment is only proper "where the party opposing summary judgment points only to disputes issues of fact that are 'of an insubstantial nature.'"

6

Brill, 142 N.J. at 529. "Substantial" in the context of summary judgment is "[h]aving substance; not imaginary, unreal, or apparent only; true solid real, . . . firmly based, a substantial argument." Ibid. (quoting *Substantial*, The Compact Oxford English Dictionary (2d ed. 1993)).

It is firmly established that "an assessment of sales or use tax is presumptively correct." Quest Diagnostics, Inc. v. Dir., Div. of Taxation, 21 N.J. Tax 484, 490 (Tax 2004), aff'd, 387 N.J. Super. 104 (App. Div. 2006). If the challenge to the Division's audit methodology stems from an assertion of inadequate books and records, a plaintiff can only rebut the presumptive correctness of the assessment through "cogent evidence that must be 'definite, positive and certain in quality and quantity to overcome the presumption.'" Yilmaz, Inc. v. Dir., Div. of Taxation, 22 N.J. Tax 204, 236 (Tax 2005), aff'd, 390 N.J. Super. 435 (App. Div. 2007). Plaintiffs must offer evidence that focuses on the "reasonableness of the underlying data used by the Director and the reasonableness of the methodology used." Ibid. Only an aberrant methodology will overcome the presumption of correctness; an imperfect methodology will not. Ibid. Further, "naked assertions of a taxpayer, without supporting records or documentation, are insufficient to rebut the presumption that the Director's assessment was correct where it produced no evidence to support its claim that the Director's assessment is correct." Id. at 231.

The general legal principles applicable to a claim involving a challenge to the audit methodology used by the Division due to inadequate books and records are well settled. One is that a corporate taxpayer is required to keep sufficient books and records in order for the Division to determine proper tax liabilities. A second is that a presumption of correctness attaches to the Division's assessment of tax.

Pursuant to statute, a corporate taxpayer must keep sufficient books and records in order for the Division to determine proper sales tax liabilities. N.J.S.A. 54:32B-16; N.J.A.C. 18:24-2.3,

-2.4. As further set forth in the regulations, a taxpayer must make available to the Division "[a] true copy of all sales slips, invoices, receipts, statements, memoranda of price, or cash register tapes, issued to any customer . . . and records of every purchase and purchase for lease," which must be retained "for four years from the date of filing of each quarterly sales tax return." N.J.A.C. 18:24-2.3(a).

For tax periods prior to the regulation change in 2016, if summary records are maintained that "show . . . total receipts and taxable receipts," during the tax years under appeal in this case, a taxpayer could "dispose of individual sales slips, invoices, receipts, statements, memoranda of price, or cash register tapes . . . after the lapse of a period not less than 90 days from the last date of the most recent quarterly (or monthly) period for the filing of sales tax returns to which such individual sales documents pertained." N.J.A.C. 18:24-2.4(a); see also 47 N.J.R. 2919(a) (Dec. 7, 2015); 48 N.J.R. 824(a) (May 16, 2016) (amending regulation to eliminate ninety-day exception for individual records and imposing four-year retention period).[2]

If the taxpayer has failed to keep the required books and records, or if the books and records maintained do not clearly reflect income, the Division has broad authority to reconstruct income "by using any information available, whether from the vendor's place of business or from any other source." See N.J.S.A. 54:32B-19; Yilmaz, 22 N.J. Tax at 231, 235; Alpha I, 19 N.J. Tax at 57; L.B.D. Const., Inc. v. Dir., Div. of Taxation, 8 N.J. Tax 338 (Tax 1986); Ridolfi, t/a Hub Bar v. Dir., Div. of Taxation, 1 N.J. Tax 198 (Tax 1980). The determination whether a taxpayer's

---

[2] Effective May 16, 2016, a taxpayer must "maintain individual sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks for a period of four years from the last date of the most recent quarterly period for the filing of sales tax returns." N.J.A.C. 18:24-2.4(a). As the audit period extends only from January 1, 2008 through March 31, 2012, this amended provision does not apply in this case.

records are "inadequate" depends on the facts and circumstances of each case. Saulwil, Inc. v. Dir., Div. of Taxation, 2020 N.J. Tax LEXIS 1, at \*21 (Tax 2020).

Even if a mark-on analysis is appropriate, the taxpayer may challenge the assessment with "some particularized issue concerning the data utilized or soundness of the reconstruction methodology." Coliseum Pizzeria, Inc. v. Dir., Div. of Taxation, 24 N.J. Tax 369, 376 (Tax 2008). This issue must be substantiated with evidence that "focus[es] on the reasonableness of the underlying data used by the Director and the reasonableness of the methodology used." Yilmaz, 22 N.J. Tax at 236 (citing Ocean Pines Ltd. v. Point Pleasant Borough, 112 N.J. 1, 11 (1988)); see Charley O's, Inc. v. Dir., Div. of Taxation, 23 N.J. Tax 171, 185 (Tax 2006).

For example, in Charley O's, a corporation owned a restaurant and bar that was subject to an audit for 1993 through 1997. Charley O's, 23 N.J. Tax at 172. The corporation's fiscal year ended February 28 of each year, while its sales were subject to sales tax that was reported on a calendar year basis. Id. at 173. Even considering this discrepancy, the gross sales reported on the business's CBT returns far exceeded the gross receipts on the business's sales tax returns for the five years under audit. Ibid. The company then filed amended CBT returns, showing amounts closer to the amounts reported on the sales tax returns, but these amended returns were not filed until after the audit, and it was unclear whether the conferee considered them. Id. at 179, 181. The court surmised that in the auditor's view, "it was plain that the sales tax returns and the CBT returns could not both be correct." Id. at 186. The court found "no authority for the defendant to adopt the gross receipts as reported on the CBT returns rather than the gross receipts as reported on the sales tax returns merely because it was more convenient to do so or because the use of the gross receipts reported on the CBT return produced a large sales tax liability." Ibid. The court concluded that the taxpayer overcame the presumption of correctness by showing that instead of conducting

9

a full mark-on analysis for various products the business served — which the auditor had begun before being instructed to stop and focus only on resolving the discrepancy between the conflicting returns — the auditor "increased the purchases made by the plaintiff by an arbitrary amount which, when multiplied by the markup ratio, produced estimated gross receipts conforming with those reported on the CBT return." Ibid. (citing Yilmaz, 22 N.J. Tax at 236).

The Division argues that the case here parallels TAS Lakewood, Inc. v. Dir., Div. of Taxation, 19 N.J. Tax 131. There, a corporate taxpayer operated a telephone answering service and sold pagers and related services. Id. at 133. The gross receipts reported on taxpayer's federal income tax returns were over an order of magnitude higher than those reported on its New Jersey sales tax returns for 1993 and 1994. Id. at 133–34. The taxpayer explained this discrepancy by stating that the difference constituted sales of pagers and related services in New York, which were taxable by New York, not New Jersey. Id. at 134. The Division found that approximately 20% of the taxpayer's gross revenues reported on its federal return were reported on its New York return, so presumed that the remaining 80% constituted taxable sales in New Jersey. Ibid. The taxpayer, left with a significantly higher tax bill, could not produce any records to counter that presumption, because when the business failed at the end of 1994, all its books and records were thrown away. Id. at 134–35. Although the taxpayer's vice president testified that, in sum, its returns were correct and a mark-on was not necessary, he conceded that "there [was] no documentary proof to support any of his testimony." Id. at 138. The court did not find credible the vice president's testimony regarding his business's finances, which was speculative as to critical figures necessary to establish that the Division's underlying data was incorrect. Ibid. Thus, the court concluded, the Division was entitled to utilize the only available records in the case — the conflicting returns — to determine the correct amount of sales tax due, and its assumptions were proper. Id. at 139–40.

In the current case, plaintiff argues that summary judgment is not appropriate because there are disputes over material facts regarding the Division's mark-on rate and assessment. Plaintiff contests the application of the 1.35 mark-on ratio, which was used to reconstruct its revenue, gross profit, and subsequent tax liabilities for all years under audit. As part of its answers to interrogatories, plaintiff highlighted the difference in reported sales on the company's ST-50 sales tax return and CBT-100S corporation business tax return. Plaintiff claimed that the person who prepared these returns cannot explain this discrepancy and argued that the preparer may have mistakenly included non-taxable sales in the gross income figures on the CBT-100S. Thus, plaintiff argued that the Division cannot accept the sales shown on the CBT-100S for the purposes of a mark-on analysis if it can prove that the calculation used to determine the sales was inaccurate, even if due to a mistake on plaintiff's behalf. Following the May 16, 2017 conference, plaintiff presented calculations based on "a matrix of cost per item and sale price per item." The plaintiff asserted that these calculations show that the store only made a profit of 17%, therefore, auditor used an unduly high mark-on ratio.

At its core, plaintiff's argument parallels Charley O's, in that whether due to a mistake or to increase the numbers, the amounts reported clearly cannot be reconciled. The court agrees that conflicting data does not give the Division carte blanche to base its calculations on inaccurate data. Further, unlike TAS Lakewood, plaintiff does not approach the court empty-handed. Instead, plaintiff here presents an offer to call two CPAs to testify as to the appropriate gross profit percentage to apply to plaintiff in a mark-on analysis. As part of this testimony, plaintiff offers price sheets showing that its average profit percentage on beer, wine, and liquor is 17%. According to the Division, 95.82% of plaintiff's sales were of alcoholic products. Assuming plaintiff's profit margin on alcohol is correct, it would assume plaintiff makes a substantially higher gross profit

11

percentage on non-alcoholic products to achieve a mark-on ratio of 1.35. But in any case, plaintiff need not prove specifically that a 1.35 mark-on is outright impossible; it need only prove that the Division's assumptions here constitute an aberrant methodology to overcome the presumption.

The court is satisfied that summary judgment on the reasonableness of the assessed taxes is inappropriate here. The court cannot summarily decide the material issue of the reasonableness of the mark-on ratio as applied to other tax years without considering contrary factual proofs available from plaintiff that the Division did not peruse. See, e.g., Yilmaz, 22 N.J. Tax at 236. Here, the Division made a point of stating that prices are not shown anywhere in the store; however, the lack of listed prices does not mean that the shopkeeper arbitrarily sets them for every transaction. Given that the bulk of plaintiff's receipts are from alcoholic products and the Division of Taxation can obtain the invoices for those purchases from the Division of Alcoholic Beverage Control, it follows that the Division of Taxation could have further inquired and explored the prices for the products in the store and performed a traditional mark-on analysis. Like the court in Charley O's, this court will not grant summary judgment when presented with an audit that shortcuts a full mark-on reconstruction in favor of values from conflicting tax returns, especially when Division's calculations were based on estimated data. The court finds that plaintiff has formulated a particularized issue as to this underlying data, establishing that genuine issues of material fact exist under Brill to warrant trial in this matter.

The above stated reasons also constitute the basis for denying summary judgment on the GIT-ER and litter tax assessments, as those assessments are based on the same calculations. Until the validity of the Division's methodology is tried, the court cannot confirm these assessments by way of summary judgment.

## CONCLUSION

For the reasons set forth above, the court concludes that defendant's motion for summary judgment is **DENIED** and the matters will be tried.

Very truly yours,

_____
Hon. Jonathan A. Orsen, J.T.C.