ANDREW, P.J.T.C.
In this state tax case plaintiff, TAS Lakewood, Inc., a New Jersey corporation, contests a deficiency assessment under the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29 for the period April 1, 1993 to December 31, 1994. The contested deficiency assessment was imposed by defendant, Director of the Division of Taxation, because an audit of plaintiffs records revealed discrep- *133 aneies between the gross receipts reported by plaintiff in its United States corporation income tax return and its New Jersey sales tax returns. As a consequence, the Division imposed a sales tax assessment of $76,061.76 with interest of $26,022.92 calculated to December 20, 1997 for a total tax due of $112,084.68. The Division issued its notice of assessment to plaintiff on April 10, 1997.
Plaintiff filed a protest and a request for a hearing with the Division on July 8, 1997. After an administrative conference was held with representatives of plaintiff and the Division on November 18, 1997, the Director issued a final determination dated December 8, 1997 in which the Director confirmed that the original deficiency assessment was correct. The Director’s final determination noted that plaintiff had failed “to provide any documentation refuting the audit findings at the conference of November 18, 1997.” Plaintiff then filed a complaint with this court challenging the Director’s final determination.
During the period 1989 to 1994 plaintiff engaged in the business of a telephone answering service and pager sales and related paging services. See Radiofone Corp. of N.J. v. Director, Div. of Taxation, 4 N.J.Tax 420, 423-24 (Tax 1982), for an explanation of pagers and related paging services. Plaintiff terminated its business operations toward the end of 1994 for a number of reasons unrelated to the present litigation. Plaintiff concedes that its answering sendee was subject to the New Jersey sales and use tax, but contends that its pager sales and related paging services were not subject to sales tax in New Jersey. The Director’s deficiency assessment is predicated on these sales of pagers and paging services. During the course of the audit of plaintiffs books and records, the Division observed that plaintiff’s reported gross receipts for New Jersey sales and use tax purposes did not match the gross receipts reported by plaintiff on its United States corporation income tax return. Specifically, the gross receipts reported by plaintiff on its United States corporation income tax return for the calendar year 1993 were $1,040,157 while plaintiff reported gross receipts of $47,115 on its New Jersey sales tax returns for 1993. For tax year 1994, plaintiff reported gross *134 receipts of $882,748 on its United States corporation income tax reten while it reported gross receipts of $62,533 on its New Jersey sales tax returns.
Plaintiff claimed that the difference was due to sales of pagers and paging service to customers in New York which sales were not taxable for New Jersey sales and use tax purposes. The Division then reviewed plaintiffs 1993 New York general business corporation franchise tax retan in which plaintiff reported sales of $207,491 attributable to New York while its gross sales were $1,040,157, the same figure plaintiff reported on its United States corporation income tax return for 1993. Stated somewhat differently, plaintiff reported that 19.94804% ($207,491 -h $1,040,157 = 19.94804%) of its 1993 gross receipts were attributable to New York sales. The Division took plaintiffs New York sales as reported on its 1993 New York franchise tax reten and then calculated plaintiffs sales tax deficiency on the basis that all of its receipts except for the reported New York sales were attributable to New Jersey.
Plaintiff contended before the Division that its out-of-state sales were greater than the figure reported on its 1993 New Yoi*k franchise tax retan but was unable to provide any documentation to support that claim. ' This default apparently was due to the fact that at the end of 1994, when plaintiff ceased its operations but before it closed its doors, it disposed of all its operating books and records in a trash dumpster located at the rear of its Dover, New Jersey office.
In the record there appear to be two explanations as to how this occurred. The first is that since the business had failed, the records would no longer be required and therefore disposal in a trash dumpster was appropriate. The second was offered by plaintiffs only witness, Stanley I. Pure, the vice president of plaintiff, TAS Lakewood, at the trial of this matter on April 11, 2000. After it was determined that TAS Lakewood would close its doors in late 1994 and cease operations, Pure asked the husband of a TAS Lakewood employee to clean out the office in Dover, N.J. over a weekend. When Pure went to the office the following *135 Monday, he discovered that, in addition to the trash and useless equipment, all of TAS Lakewood’s records and books had been thrown out. According to Pure, the books and records were thrown out by mistake. As a consequence, there are no books or records to support any claims made with respect to the business operations of TAS Lakewood not only during the audit period but at anytime during the business life of TAS Lakewood.
In this proceeding plaintiff makes four claims in its challenge to the Director’s deficiency assessment. First, plaintiff contends that the pager sales and the related pager service were not taxable under the sales and use tax act. Second, plaintiff asserts that the Director’s basis for imposing the deficiency assessment is an educated guess based on plaintiff’s revenues but plaintiff argues that the actual revenues attributable to New Jersey transactions are lower than the figures used by the Director in arriving at his deficiency assessment.
Third, plaintiff contends that it is entitled to credit for the sales tax it paid to its suppliers for the goods and services that it resold to its own customers.
Fourth and last, plaintiff claims tax amnesty benefits with respect to the waiver of interest and penalties even though plaintiff did not apply for tax amnesty during the designated tax amnesty period of Friday, March 15, 1996 to midnight, Saturday, June 1, 1996. See N.J.S.A 54:53-17 and N.J.A.C. 18:39-1.1(b). Plaintiff abandoned this claim with respect to tax amnesty at the outset of the trial.
It should be noted that during the course of the trial, Stanley I. Pure advanced an additional claim when he testified that TAS Lakewood also made a number of sales to tax exempt entities and that the Division did not provide credit for these tax exempt sales in the calculation of the deficiency assessment at issue in this case. This claim was not raised during the audit conducted by the Division, nor was it raised during the conference before the Division. It was not asserted in plaintiffs complaint, nor was it preserved in the pretrial order in this case which specifically provided that any issue not preserved in the pretrial *136 order was deemed to be abandoned. Therefore, I will not consider the claim now. There is, however, an additional reason why the claim is not persuasive and I will say more of this later.
The only proof offered by plaintiff to controvert what the Division did in this ease was the uncorroborated testimony of Stanley I. Pure. Pure went to work for TAS Lakewood, Inc. in approximately 1986 as a manager and three or so years later, became a 50% shareholder in plaintiff corporation. I assume that was when he became plaintiffs vice-president. As related by Pure, the business conducted by plaintiff was the sale of telephone answering services and the sale of pagers and pager air time or paging service.
In 1993, Pure indicated that a customer by the name of “Marty” who was from the religious community in New York inquired about selling pagers for TAS Lakewood in New York. Pure related that he provided Marty with twelve pagers and that Marty sold these to customers in New York. At least as far as Pure knew the sales by Marty took place in New York.
This arrangement, which was not reduced to writing, blossomed for about six months as Pure related that Marty disposed of approximately 1000 of these pagers in New York during the audit period of 1993 and 1994.
It is interesting to note that Pure did not know or remember Marty’s last name or where he could be located, nor did Pure know specifically where Marty’s sales were made, only that Marty told him the sales were to New York customers. Plaintiffs casein-chief did not include Marty as a witness. It is also interesting to note that there was no written agreement with Marty. Lastly, it is of interest that Pure’s deposition testimony was that Marty sold approximately 600 pagers in New York while the number at the time of trial had increased to approximately 1000. I am not convinced that Pure’s memory got better with the passage of time.
Pure indicated that TAS Lakewood did not collect sales tax for the sales of pagers sold by Marty or the related pager air time because these were all sales in New York and thus, Pure believed, based on an opinion given to him by a certified public accountant, *137 Joseph C. Maida, that sales made to New York customers were not taxable in New Jersey. It is interesting to note, however, that if the sales were not taxable in New Jersey then one might assume that the sales to New York customers were taxable in New York. Yet, Pure indicated that TAS Lakewood did not file sales tax returns in New York at any time nor did TAS Lakewood collect sales tax for any sales in New York. Pure indicated that the same accountant, Joseph C. Maida, had advised him that sales to New York customers by a New Jersey based corporation were not subject to sales tax in New York, and therefore, plaintiff did not collect sales tax for New York on plaintiffs New York sales.
The joint stipulation of facts submitted by the parties included as an exhibit a letter written by Joseph C. Maida dated September 12, 1996, in which Maida advised that sales by TAS Lakewood to customers in New York would not be subject to sales tax in New Jersey, but it says nothing about whether those sales would be subject to sales tax in New York. Maida was not called by plaintiff to verify that Maida had, in fact, advised Pure that sales by TAS Lakewood to customers in New York would not be subject to New York sales tax. I do not believe that Maida ever advised Pure to that effect. I note parenthetically that even if Maida did voice the opinion attributed to him by Pure, that plaintiffs sales in New York were not taxable in New York, that opinion would not be binding on the New York taxing authorities.
As I have previously indicated, TAS Lakewood filed a 1993 New York general business corporation franchise tax return in which plaintiff reported sales of $207,491 attributable to New York, while plaintiffs gross sales for 1993 were $1,040,157 as reported on plaintiffs 1993 U.S. corporation income tax return. Pure explained that the sales allocated to New York did not include the sales of pagers in New York or the sale of pager air time to New York customers because he believed that these sales to New York customers were not taxable. I am not convinced of Pure’s credibility in this regard. There are a number of other elements of his testimony that I did not find convincing.
*138 Pure also indicated that when plaintiff purchased pager ah- time from its supplier, Telecommunications Network, Inc. or TNI, it paid sales tax and, therefore, TAS Lakewood should receive credit for the sales tax paid to its supplier. However, Pure testified that TNI is not presently in business and that fact impeded his ability to get any records from TNI to support his claim that sales tax had been paid to TNI. Thus, the only support for the claim that sales tax was paid to TNI for ah' time that was resold to plaintiffs customers is Pure’s claim to that effect.
In answer to a question posed by counsel for the Director, Pure confirmed that there is no documentary proof to support any of his testimony,
Pure also testified that TAS Lakewood made sales to exempt entities such as the American Society for the Prevention of Cruelty to";Animals which amounted to approximately 5% of its total sales?” This claim was made seeking credit against the tax deficiency in this case. As I previously mentioned, this issue was not raised in plaintiffs complaint nor in the pretrial order. But more important, there is absolutely nothing in the record to support Pure’s claim or memory in this regal'd. I am not convinced by Pure’s testimony that sales were made during the audit period to tax exempt entities simply because Stanley Pure says it was so. As he indicated in answer to a question posed by counsel for the Director, “you’re asking me for more detail than I can give you.” This statement underscores the fact that plaintiffs claims are based solely on Pure’s memory which may be neither accurate nor complete. The fact that there is nothing in this proceeding to corroborate any claim or figure presented by Pure makes his testimony highly suspect. This is also highlighted by an answer Pure gave to a question by counsel for plaintiff on direct examination as to the percentage of sales to tax exempt organizations. Puré was asked, “Do you have an estimate as to what percentage of sales, you believe you recollect?” To which Pure answered, “I really don’t, but I am saying that 5% would probably be in the vicinity.” Í am not persuaded by this kind of testimony.
*139 There was no documentary evidence or records or corroborative testimony presented by plaintiff to support any of plaintiffs contentions or the testimony of Stanley I. Pure. No attempt was made to produce witnesses such as “Marty” who may have had relevant knowledge of the sales transactions at issue in this case. No attempt was made to introduce evidence or figures to support any other method to determine plaintiffs taxable sales during the audit period other than to insist that the receipts that the Division sought to tax were attributable to sales made to customers in New York and, therefore, were not taxable in New Jersey. This failure was due, as I have mentioned, essentially to the fact that plaintiff disposed of its books and records when it closed its doors and ceased business operations in late 1994. Plaintiff did not maintain its records despite the clear statutory and regulatory authority requiring that business records be preserved for at least four years. See N.J.S.A. 54:32B-16, N.J.A.C. 18:24-2.3, -2.6 and -2.8.
In the absence of such records, N.J.S.A. 54:32B-19 instructs the Division to determine the correct amount of tax due from such information as may be available. The only available records were the tax returns filed by plaintiff during 1993 and 1994. The Division utilized the only available records in this case to determine the correct amount of the sales tax due for the audit period.
Based upon the evidence submitted I make the following findings.
1. The Division was justified in relying on plaintiffs tax returns for tax years 1993 and 1994. Specifically, the Division was justified in relying on plaintiffs 1993 United States corporation income tax return, plaintiffs New Jersey sales tax returns for 1993 and 1994, plaintiffs 1994 United States corporation income tax return and plaintiffs 1993 New York general business corporation franchise tax return and the figures contained in those reports for the Division’s audit purposes. These were tax returns prepared and submitted by plaintiff and were declared to be true, accurate, and complete.
2. The allocation by the Director of 80.05195% of plaintiffs gross receipts being attributable to New Jersey sales and *140 services was a proper assumption in the absence of any records or convincing testimony by plaintiff of the actual sales and services. Stated another way, the Division was justified, based on plaintiffs tax returns, in concluding that 19.94804% of plaintiffs gross receipts were attributable to sales and services rendered outside the State of New Jersey (specifically New York — even though plaintiff conceded that it did not file New York State sales tax returns nor pay New York sales taxes). This was justified in the absence of any records or convincing testimony demonstrating the actual sales and services or the actual allocation.
3. The conclusion of the Division that the reported taxable receipts subject to sales tax should have been $1,708,427 for the period of April 1,1993 to December 31,1994 and were understated by $1,267,696 resulting in a sales tax deficiency of $76,061.76 plus interest at the statutory rate was a justifiable conclusion.
The naked assertions of plaintiffs vice president, Stanley I. Pure, the only evidence produced by plaintiff, are insufficient to rebut the presumption of correctness of the Division’s determination. See Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146, 95 A.2d 895; Ridolfi v. Director, Div. of Taxation, 1 N.J.Tax 198, 203 (Tax 1980). The sales tax act provides that all receipts for sales of tangible personal property and certain enumerated services are presumed to be taxable. N.J.S.A 54:32B-12(b). Moreover, the statute specifically gives the Division the authority to readjust and redetermine the taxable sales based upon external indices. N.J.S.A. 54:32B-19.
The absence of specific sales information as to out-of-state sales makes such action necessary in this ease. The Director’s use of the information that was available to determine the correct amount of tax was authorized by N.J.S.A. 54:32B-19. That determination canied a pi’esumption of coiTectness and it is plaintiffs obligation to overcome this px’esumption by competent evidence.
It is my conclusion after reviewing all of the evidence that plaintiff did not overcome the px’esumption of coiTectness by competent evidence. Notwithstanding the fact that plaintiff has failed to x-ebut the pi’esumption, I have x-eviewed the audit figures *141 and conclude that the tax deficiency imposed based on the only available records, the tax returns filed by plaintiff during 1993 and 1994, is reasonable and justified by law. The Division’s deficiency assessment is affirmed. The Tax Court Administrator is directed to enter an appropriate judgment.