PIZZUTO, J.T.C.
Defendant Director of the Division of Taxation, (the “Division”) has moved for summary judgment sustaining the Division’s assessment of $151,050.34 against plaintiff taxpayer for unpaid Sales Tax, Corporation Business Tax (“CBT”), Litter Tax and Gross Income Tax withholding. In auditing taxpayer’s transactions, the Division determined that adequate records were not available to demonstrate taxpayer’s actual receipts. The Division therefore undertook a reconstruction of taxpayer’s operations utilizing available records to determine its purchases and a markon (sometimes called a “markup”) analysis to determine taxable sales. See Yilmaz, Inc. v. Director, Division of Taxation, 22 N.J.Tax 204 (Tax 2005), aff'd, 390 N.J.Super. 435, 915 A.2d 1069 (App.Div. 2007), certif. denied, 192 N.J. 69, 926 A.2d 854 (2007).
The Division’s moving papers include a detañed certification of the auditor who conducted the examination of taxpayer’s business. It explains the documents requested, those provided, the data extracted and the reconstruction process employed. Taxpayer’s opposition papers consist essentially of brief eonelusory statements of taxpayer’s principal that the business did not realize the revenue the Division imputes to it. No documentation is provided nor is any particular issue taken with the methodology utilized in the auditor’s reconstruction. The question presented is whether the Division is entitled to summary judgment or whether taxpayer’s opposition demonstrates the existence of a genuine dispute concerning a material issue of fact so as to require trial under the *371 standard articulated in Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995).
The auditor’s certification narrates the following facts, considered to be established without dispute. Taxpayer, Coliseum Pizzeria, Inc., is a “C” Corporation, which operates a pizzeria, located in Teaneck, New Jersey. Taxpayer sells pizza, hot and cold sandwiches, and entrees such as steak, chicken, eggplant and shrimp. In addition to food, taxpayer also sells beverages in sizes from twelve ounces to twenty-two ounces.
The Division audited taxpayer for the period from. January 1, 1998 through December 31, 2001. On April 4, 2002, the auditor sent a letter to taxpayer’s accountant requesting the following records: payroll records, W2s, New Jersey Withholdings (NJW3s) for 1999, 2000 and 2001; cancelled checks for 1999; purchase invoices for 1999; three months of current purchase invoices; fixed asset invoices for 1998, 1999, 2000 and 2001 with depreciation schedule; register tapes and consumer checks for 1999; cash disbursement journal; and general ledger.
Taxpayer claimed that it maintained the following records: a general ledger; a cash disbursement journal; a sales journal; a cash receipts journal; a depreciation schedule; vendor bills; bank statements; cancelled checks; a check register and payroll records. Despite the Division’s follow-up meetings and numerous requests, taxpayer was unable to produce any cash register tapes, a cash disbursement journal, a sales journal and/or purchase invoices for the audited period.
Taxpayer’s inability to produce the financial documents requested by the Division resulted, in part, from a lack of record-keeping. Taxpayer used a computerized cash register, but register tapes were not saved. Also, the cash register drawer was emptied approximately three times a day by the president of the corporation, who also made the bank deposits. Cash disbursements used for employee wages and certain purchases were not recorded. Orders for supplies were generally placed by telephone, and as a result no written purchase orders were completed. Also, coupons accepted by taxpayer were discarded at the close of business each *372 day. Taxpayer calculated its receipts by subtracting sales tax from the total bank deposits. Also, sales tax due to the state was determined by multiplying the total bank deposits by a percentage factor.
Upon review of the documents actually produced by taxpayer,[1] the auditor determined that taxpayer’s submission was inadequate to conduct the audit properly and a markon analysis was necessary. To apply the markon analysis, the auditor performed the following steps:
1. Purchases, as stated in actual invoices provided for a one-month period in 2002 ($10,497), were multiplied by 12 to calculate an annual figure ($125,964). This amount was compared with the annual purchases reported in taxpayer’s CBT return for 2002 ($126,452). Purchases for 2002, the year following the audit period, were accepted as those reported.
2. This 2002 reported figure was compared with purchases as reported in the 2001 CBT return ($19,992). On the assumption that purchases for 2001 and 2002 were approximately equal, the auditor utilized the 2002 number for 2001, the final year of the audit period. She calculated the ratio of actual 2002 purchases to reported 2001 purchases (6.3251).
3. This ratio was then applied to reported purchases for three earlier years of the audit period. The resulting adjusted purchase figures were further adjusted to reflect approximately 15 percent annual growth between 1998 and 2001. Final adjusted purchases were as follows: 1998: $83,408; 1999: $95,369; 2000; 107,234; 2001:$126,452.
4. By comparison of sales with purchases for the 2002 month for which actual purchases were determinable, the auditor calculated a markon ratio of approximately 3.1613 of sales to purchases. This markon ratio was applied to the adjusted purchase figures for each year calculated in the previous step to produce adjusted gross sales as follows: 1998: $263,680; 1999: $301,494; 2000: $339,002; 2001: $399,758; Totaling: $1,303,934.
5. The total was reduced for Sales Tax purposes by $25,600 representing exempt sales to schools.
6. Six percent Sales Tax due on the resulting taxable sales figure ($1,278,334) was calculated to be $76,700.04. After an allowance for tax actually remitted, an assessment was made for the remainder in the amount of $59,343.66.
7. On the basis of the adjusted gross sales figures calculated in the audit, the auditor determined the balance due for CBT to be $47,186 and for Litter Tax to be $262.78. Gross Income Tax withholding due was calculated at $1,872.00.
*373 8. Tho total assessment before applicable penalties and interest was $108,664.44. With penalties and interest to the assessment date, the total assessment was $151,050.34.
Taxpayer’s submissions in opposition to the Division’s motion consist of two certifications of the corporation’s president, each shorter than one page. Essentially, the certifications maintain that the revenues from the business were less than the auditor’s reconstruction. The first certification, accompanied by a letter the president had written to counsel for the Division, characterizes the auditor’s calculations as incorrect and generally disputes the treatment of spoilage, sales volumes and the fluctuating costs of cheese. Neither the certification, nor the letter, presents documentation or alternative quantitative data, except to state that for an indeterminate time large pies were sold for $5.99 (rather than $6.49) on Monday and Tuesday.
The second certification, submitted after the court allowed additional time for taxpayer to supplement its opposition to summary judgment, estimates the revenues of the business at $160,000 for 1998, $190,000 for 1999, $215,000 for 2000 and $240,000 for 2001 for a four-year total of $805,000, as opposed to the Division’s calculation of $1,303,934. The certification provides no basis for these estimates. It is accompanied by a letter to taxpayer’s principal from an accountant proposing revisions to the auditor’s calculations of purchases and markon percentage that would yield total revenues of $872,980. The accountant’s analysis is neither sworn nor certified, and the president’s certification recites that he disagrees with the accountant’s figures and would agree to twenty-five percent of the Division’s figures.
It does not appear, therefore, that taxpayer proposed to present at trial the testimony of an accountant who has reviewed the existing records of the business and on the basis of that review would provide alternative calculations to those of the auditor. Unless taxpayer were prepared to do so, the trial it seeks would amount to an independent examination of the audit data by the court in light of the principal’s unexplained and unquantified objections to the auditor’s conclusions. The standards governing allowance of summary judgment applied in light of the standard of *374 review governing audit reconstructions do not allow such a proceeding.
In the standard articulated in Brill, the Supreme Court of New Jersey stated that “a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that create a ‘genuine issue as to any material fact challenged.’ ” Brill, supra, 142 N.J. at 529, 666 A.2d 146 (quoting R. 4:46-2(e) (emphasis in original)). “That means a non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute.” Ibid, (emphasis in original).
The Sales and Use Tax Act outlines the standards for the administration and collection of sales tax. N.J.S.A. 54:32B-1 et seq. Specifically, N.J.S.A. 54:32B-24(5), which authorizes the Division to require a taxpayer to maintain detailed records, provides:
[T]he director is hereby authorized and empowered ... [t]o require any person required to collect tax to keep detailed records of all receipts, amusement charges, or rents received, charged or accrued, including those claimed to be nontaxable, and also of the nature, type, value and amount of all purchases, sales, services rendered, admissions, occupancies, names and addresses of customers, and other facts relevant in determining the amount of tax due and to furnish such information upon request to the director.
[N.J.S.A. 54:32B-24(5).]
The Sales and Use Tax Act regulations in the New Jersey Administrative Code provide that sales summary records showing “sales location, total receipts and taxable receipts ... shall be retained [by a taxpayer] for a period of not less that four years from the last date of the quarterly (or monthly) period for the filing” to which the sales records pertain. N.J.A.C. 18:24-2.4(a), (b). Similarly, N.J.AC. 18:24-2.8 requires vendors to maintain, for at least four years, “[n]ames and addresses of persons from which purchases were made; [a]mounts of all purchases; [t]he dates upon which all purchases were made; and [t]he nature of the items or services purchased.” N.J.AC. 18:24-2.8.
Where a taxpayer fails to maintain the records outlined in the regulations, the Division is authorized to deem the records insuffi *375 cient. The regulation defining the standard to determine insufficiency, N.J.AC. 18:24-2.15(a), provides:
The records of a vendor may be deemed incorrect or insufficient if ... [a]n evaluation of the accounting system discloses that the system does not provide adequate internal control procedures which assure the accuracy and completeness of the transactions recorded in the books and records.
[N.J.A.C. 18:24—2.15(a).]
It is a well established principle, that where the records are deemed insufficient, “the Director is given broad authority to determine the tax from any available information and, if necessary, to estimate the tax from external indices.” Yilmaz, supra, 390 N.J.Super. at 441, 915 A.2d 1069; Ridolfi v. Director, Division of Taxation, 1 N.J.Tax 198, 202-203 (Tax 1980). The statute that generally governs this principle, N.J.S.A. 54:32B-19, provides, in pertinent part:
If a return required by this act is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the director from such information as may be available. If necessary, the tax may be estimated on the basis of external indices, such as stock on hand, purchases, rental paid, number of rooms, location, scale of rents or charges, comparable rents or charges, type of accommodations and service, number of employees or other factors.
[N.J.S.A. 54:32B-19.J
In addition, the New Jersey Administrative Code provides the Director with broader powers to determine the taxes due. N.J.A.C. 18:24-2.15(b). The regulation provides as follows:
If the records of a vendor are determined to be incorrect or insufficient, the return(s) filed on the basis of the information obtained from such records may be deemed to be incorrect or insufficient and the director may determine the amount of tax due the state by using any information available, whether from the vendor’s place of business or from any other source.
[N.J.A.C. 18:24-2.15(b).]
Pursuant to this statutory authority and regulatory standard, the Director is permitted to use all available financial information and/or external sources to determine the taxes due where a taxpayer’s records are determined to be insufficient.
In the current case, despite the Division’s several requests, taxpayer provided the Division with only a portion of the documents requested. As a result, the Division deemed taxpayer’s records insufficient and used the information provided by the *376 taxpayer to determine the final assessment of taxes owed, as permitted by N.J.S.A. 54:32B-19 and N. ZAC. 18:24-2.15(b).
The Division’s assessment is afforded a presumption of correctness. Atlantic City Transportation Co. v. Director, Division of Taxation, 12 N.J. 130, 146, 95 A.2d 895 (1953); Yilmaz, supra., 390 N.J.Super, at 440, 915 A.2d 1069. To rebut the presumption of correctness, a taxpayer must show “cogent evidence that is ‘definite, positive and certain in quality and quantity.’” Yilmaz, supra., 390 N.J.Super, at 440, 915 A.2d 1069 (quoting Pantasote Co. v. Passaic, 100 N.J. 408, 413, 495 A.2d 1308 (1985)). Here, taxpayer merely provides the certification of its president expressing an unsubstantiated claim that the Division’s assessment was “too high.” It bears reiterating that the court granted taxpayer’s request for additional time to submit the sufficient evidence to rebut the Division’s presumption of correctness.
In TAS Lakewood, Inc., this court affirmed an assessment on the basis of the presumption of correctness where the Director used the only available records to determine the taxes due. TAS Lakewood, Inc. v. Director, Division of Taxation, 19 N.J.Tax 131, 139 (2000); See also Kramer v. Director, Division of Taxation, 24 N.J.Tax 105 (2008). Judge Andrew concluded that the “naked assertions” of the taxpayer’s vice-president (the only evidence produced by the taxpayer) were insufficient to rebut the presumption of correctness for the Director’s determination. TAS Lakewood v. Director, supra, 19 N.J.Tax at 140. In the current ease, taxpayer’s president also makes “naked assertions” that the Division’s assessment was incorrect. Furthermore, taxpayer provided no cogent evidence to rebut the presumption of correctness beyond the unsubstantiated assertions of its president.
Under the standard of review applicable to assessments formulated by audit reconstructions, taxpayer must tender some particularized issue concerning the data utilized or the soundness of the reconstruction methodology. This is not a case where summary judgment can be avoided by a demand for cross-examination of the auditor without the tender of such an issue, devel *377 oped either in the course of the audit or in discovery. Where there are questions of state of mind, or intent or credibility, summary judgment is inappropriate. Ricciardi v. Weber, 350 N.J.Snper. 453, 470, 795 A.2d 914 (App.Div.2002), certif. denied, 175 N.J. 433, 815 A.2d 479 (2003). There is no question of that kind here, where the issue concerns selection of data and methods employed to analyze that data.
Under the principles established in Yilmaz and the standards articulated in Brill, taxpayer has failed to demonstrate the existence of a genuine dispute concerning a material issue of fact (specifically, the correctness of the auditor’s reconstruction of its revenue) so as to require trial. The Division’s motion for summary judgment is therefore granted.

 Taxpayer provided the following documents: five current invoices for 2002; invoices for one additional month; bank statements for 1998-2000; W2s and NJ-W3’s for 1999-2001; general ledger for 1998-2001; and purchase invoices for June 2002.