**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

-------------------------------------------------------x

| | | |
|---|---|---|
| 1517 E 21st STREET CORPORATION, | : | TAX COURT OF NEW JERSEY |
| | : | DOCKET NO.: 010531-2022 |
| Plaintiff, | : | |
| | : | |
| v. | : | <u>Civil Action</u> |
| | : | |
| DIRECTOR, DIVISION OF TAXATION, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------x

Decided: May 29, 2026

Guvenc Acarkan for plaintiff
(Law Offices of Guvenc Acarkan, attorney).

Timothy M. Kawira, Deputy Attorney General for defendant
(Jennifer Davenport, Attorney General of New Jersey, attorney).

NOVIN, J.T.C.

This shall constitute the court's opinion on the defendant, Director, Division of Taxation's (Director) motion for summary judgment. At issue is whether plaintiff taxpayer, 1517 E 21st Street Corporation (plaintiff) maintained adequate business records to establish its actual sales and receipts and thus verify its self-assessed tax liabilities.

For the reasons stated more fully below, the court grants the Director's motion for summary judgment.

## I.  **Findings of Fact and Procedural History**

Pursuant to R. 1:7-4(a), the court makes the following factual findings and conclusions of law based on its review of the pleadings, the undisputed material facts, and the parties' exhibits.

During the tax years at issue, plaintiff operated a bar known as McFaddens, selling beer, liquor, and wine. Plaintiff was owned and operated by Jayesh Majmundar (Jayesh) and

1

Chandravadan Majmundar (C.P.) (Jayesh and C.P. shall be collectively referred to herein as the shareholders). Jayesh and C.P. each owned a fifty percent interest in the plaintiff.

On or about February 18, 2015, the Director began an audit of the plaintiff. The audit included Corporation Business Tax, N.J.S.A. 54:10A-1 to -41 (CBT), for the period January 1, 2010 through December 31, 2013; Gross Income Tax – Employer Withholding, N.J.S.A. 54A:7-1 to -7 (GIT-ER), for the period January 1, 2012 through December 31, 2014; and Sales and Use Tax, N.J.S.A. 54:32B-1 to -29 (SUT), for the period of January 1, 2011 through December 31, 2014.

On March 25, 2015, the Director's auditor conducted a pre-audit meeting with plaintiff. During the meeting plaintiff completed a pre-audit questionnaire indicating that the following business records were available: "Sales Journal [for] 2014,"; "Deposit Slips"; "NJ CBT_100's"; "Vendor Bills [for] 2014"; "Bank Statements"; "Canceled Checks"; and "Payroll Records/Journals [for] 2014." During the meeting plaintiff provided the auditor with: "2014 bank statements; [. . .] daily sales book; Cash receipts for 2014; and beer/liquor purchase[] invoices."

On March 25, 2015, the auditor issued plaintiff a first Information Document Request (First IDR), seeking production of the following documents: "copies of the 2012 and 2013 CBT returns; the general ledger for 2010 through 2014; trial balance or profit & loss Statements for 2010 through 2014; owner 1040's for 2011 through 2014; W-2s and NJ W-3s with payroll summaries for 2012 to 2014; purchases invoices for October, November, and December 2014 with images of cancelled checks; 2014 purchase invoices; register tapes for the last quarter of 2014; and the sales journal for the S&U audit period."

On or about April 20, 2015, the auditor attended a meeting at the plaintiff's place of business. During the meeting plaintiff provided the auditor with "2010 to 2013 bank statements

and [the] daily sales book."[1]

On October 29, 2018, the auditor issued plaintiff a second Information Document Request, (Second IDR). The Second IDR explained that the business records provided to date were insufficient to conduct the audit. Therefore, the auditor asked plaintiff to produce the following: "a copy of the 2012 and 2013 CBT returns; the general ledger for 2010 through 2014; the trial balance or profit and loss statements for 2010 through 2014; owner 1040[']s for 2011 through 2014; current purchase[] invoices for October, November, and December 2014 for food and other purchase items; register tapes for the last quarter 2014, cash invoices supporting the purchase journal worksheet; Form 1099-K statements for all merchandise credit card accounts; and the party event journal book for the audit periods."

On or about December 4, 2018, plaintiff produced "[a] copy of General Ledger for 2010 to 2014." Plaintiff did not produce any other documents demanded under the First IDR or Second IDR.

On January 9, 2019, the auditor again met with the plaintiff to review the documents that had been provided in response to the First IDR and Second IDR. The plaintiff had failed to produce: "2012 and 2013 CBT returns[;] any profit and loss statements or trial balances for 2010 to 2014[;] any owner 1040[']s for 2011 [to] 2014[;] purchase invoices for October [to] December 2014[;] register tapes for the last quarter of 2014[;] cash invoices supporting the purchase journal worksheet[;] Form 1099-K statements for all merchandise and credit card accounts[;] [and] the party event journal book for the audit periods."

---

[1] The auditor's work file notes reveal that on May 11, 2015, the plaintiff "provided additional documents to audit[or]," however what those documents comprise was not in the auditor's certification or work file comments.

On or about February 21, 2019,[2] the auditor spoke with plaintiff's representative and was apparently advised that no further business records could be located. According to the auditor, she explained that "an indirect method of audit was warranted"[3] because the "[p]laintiff failed to provide sufficient information to conduct a mark-on analysis. . . ."[4]

In conducting the audit, the auditor "reconciled [plaintiff's] gross receipts for tax years 2010 [to] 2014 based on [plaintiff's] ST-50's, CBT filings and bank deposits." According to the auditor, such review "revealed unverified discrepancies, [therefore,] the reported gross receipts were not accepted as filed." The auditor then "reconciled [plaintiff's] cost of goods sold (purchases) only for 2014 . . . relying on the taxpayer's purchase invoices, available third-party information, and reported CBT purchases." However, because plaintiff did not produce "cash pay-out receipts," for the goods purchased by plaintiff with cash, "the 2014 purchases were determined to be underreported." Because "insufficient information was available," the auditor did not attempt to reconcile plaintiff's 2010 to 2013 cost of goods sold, and plaintiff's reported purchases for those periods were not accepted as filed. Thus, the auditor prepared estimated assessments.

For the audit years 2010 to 2013, the auditor applied an estimated CBT assessment of $2,000, plus interest, and penalties.

For the audit years 2012 to 2014, the auditor applied an estimated GIT-ER assessment of

---

[2] The auditor's certification recites that this discussion occurred on February 15, 2019. However, the auditor's work file notes reveal that this discussion occurred on February 21, 2019.

[3] When a taxpayer's records are inadequate or insufficient to verify reported income, an auditor may perform an indirect method audit. The indirect method attempts to reconstruct the taxpayer's income and receipts based on an analysis of a taxpayer's business records, including bank statements and bank deposits (bank deposit analysis), or a comparison of the sales price and cost of goods sold by the taxpayer (mark-on analysis). See La Troncal Food Corp. v. Dir., Div. of Tax'n, 33 N.J. Tax 435, 456 (Tax 2024).

[4] The plaintiff admits that the auditor stated that an indirect method would be used, but rejects the auditor's conclusion that insufficient business records existed.

$1,500, plus interest, and penalties.

For the audit period January 1, 2011 to December 31, 2014, the auditor applied an estimated additional SUT assessment of $18,500, plus interest, and penalties.

On May 2, 2019, the Director issued plaintiff a Notice of Assessment related to Final Audit Determination (Notice of Assessment). The Notice of Assessment recited that plaintiff was responsible for unpaid CBT, GIT-ER, and SUT liabilities in the sum of $34,485.14, inclusive of penalties and interest.

On May 2, 2019, the Director also issued C.P. a Notice of Finding of Responsible Person Status (Notice of Responsible Person), finding C.P. the "responsible person" for plaintiff.

The Notice of Assessment and Notice of Responsible Person each afforded the opportunity to file an administrative protest with the Director's Conference and Appeals Branch, or to appeal such determinations to the Tax Court.

On August 1, 2019, plaintiff submitted a protest challenging the Notice of Assessment and requesting an informal administrative conference with the Director's Conference and Appeals Branch (CAB).

On May 19, 2022, a conference was conducted with plaintiff and CAB.

On July 6, 2022, the Director issued a Final Determination letter upholding the Notice of Assessment (Final Determination). The Final Determination explained that the Director's findings were:

> based on the taxpayer not providing the following information:
> 1. Copy of owner 1040's for 2011 to 2014
> 2. Current Purchases Invoices October, November and December 2014 * other purchase items
> 3. Register Tape for the last quarter file 10/2014 to 12/2014
> 4. Cash invoices for the purchase journal worksheet
> 5. 1099k for all merchandise credit card accounts
> 6. Party Event Journal Book for the audit periods

On October 11, 2022, plaintiff filed an appeal with this court challenging the Final Determination.

On February 20, 2026, the Director filed the instant moved for motion for summary judgment. On April 5, 2026, plaintiff submitted opposition to the motion for summary judgment. On May 7, 2026, the director filed its reply brief.

## II. <u>Conclusions of Law</u>

### A. <u>Summary Judgment</u>

Summary judgment "'serve[s] two competing jurisprudential philosophies': first, 'the desire to afford every litigant who has a bona fide cause of action or defense the opportunity to fully expose his case,' and second, to guard 'against groundless claims and frivolous defenses,' thus saving the resources of the parties and the court." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995)).

R. 4:46-2 outlines the circumstances under which summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.

> [R. 4:46-2(c).]

In Brill, our Supreme Court explained that "the essence of the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In conducting this inquiry, the trial court must engage in a "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials." Ibid. The standard established by our Supreme Court in Brill is as follows:

[W]hen deciding a motion for summary judgment under R. 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential material presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.

[Ibid.]

In considering the material evidence before it with which to determine if there is a genuine issue of material fact, the court must view most favorably those items presented to it by the party opposing the motion and all doubts are to be resolved against the movant. Ruvolo v. American Casualty Co., 39 N.J. 490, 491 (1963). Thus, denial of summary judgment is appropriate when the evidence presented by the non-moving party is of such a quality and quantity that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 540. "By its plain language, R. 4:46-2 dictates that a court should deny a summary judgment motion only where a party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Id. at 529. However, summary judgment may not be denied simply because the non-movant demonstrates the existence of a disputed fact. Id. at 540-41. When the party opposing the motion merely presents "facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," then an otherwise meritorious application for summary judgment should not be defeated. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75 (1954). Hence, "when the evidence is so one-sided that one party must prevail as a matter of law. . . the trial court should not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson, 477 U.S. at 252).

Having reviewed the pleadings, certifications, and undisputed statements of material fact, the court concludes that no genuine issues of material fact are in dispute. Rather, these matters

7

involve an application of law to the undisputed facts contained in the motion record, and thus, are ripe for summary judgment.

B. Legal Arguments Presented

In support of its motion for summary judgment, the Director argues that plaintiff has "failed to provide significant portions of the requested records." The Director asserts that plaintiff's "failure to maintain all records used to determine the tax liabilities during the tax years at issue . . . runs afoul of the express record retention requirements of the . . . state statutes and regulations." The Director emphasizes that estimated SUT assessments became necessary because the plaintiff has "failed to provide sufficient information to . . . conduct a mark-on analysis." Moreover, the Director contends that plaintiff has "failed to provide sufficient records to verify its CBT liability," thus an estimated assessment was imposed. Similarly, the Director asserts that plaintiff has failed to provide "sufficient payroll records," thus an estimated GIT-ER assessment was levied. In sum, the Director maintains that, since plaintiff failed to maintain and produce sufficient books and business records, the Director is entitled to impose estimated assessments based upon available information, and that such assessments are presumed correct.

In response to the motion for summary judgment, plaintiff argues that it "identified and made available categories of financial information – including deposit slips, banks statements, vendor bills, cancelled checks, payroll records and tax filings." Although plaintiff acknowledges that its business records are "incomplete," it asserts that the information and documents made available to the Director were sufficient "to reflect business activity" and "reconstruct plaintiff's financial activity using a reasonable methodology." Plaintiff contends that its business "operated using a cash drawer system" where the cash derived from sales activities was regularly deposited into its business bank account. According to plaintiff, "the validity of the [estimated]

8

assessment[s] turn[] on how the auditor interpreted incomplete records."  In addition, plaintiff claims that in performing the audit, the auditor failed to exclude non-income items, including shareholder loans, and other non-sales transactions.  In sum, plaintiff argues that the Director's estimated assessments do not accurately reflect plaintiff's business operations.  Therefore, plaintiff maintains that a factual issue arises as to the adequacy and completeness of plaintiff's business records warranting denial of the Director's motion for summary judgment.

Thus, the issues presented to this court for disposition are: (1) whether plaintiff maintained the business records mandated under N.J.S.A. 54:32B-16, N.J.S.A. 54:32B-24(5), and N.J.A.C. 18:24-2.3(a) to -2.5; and (2) if plaintiff maintained "insufficient" business records, were the Director's estimated tax assessments aberrant, arbitrary, or capricious.

C.    Analysis

1.    Assessment of tax

The State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54-6 (SUTPL), confers on the Director broad authority to examine any return or report filed, conduct an audit of such return or report, impose a tax assessment for any tax deficiency determined thereon, and to examine all books, records, accounts, and documents of a taxpayer.  N.J.S.A. 54:49-6a provides, in part, that:

> [a]fter a return or report is filed under the provisions of any State tax law, the director shall cause the same to be examined and may make such further audit or investigation as the director may deem necessary, and if therefrom the director shall determine that there is a deficiency with respect to the payment of any tax due . . . , the director shall assess the additional taxes, penalties . . . , and interest . . . from such taxpayer . . . , from the date the tax was originally due until the date of actual payment, give notice of such assessment to the taxpayer, and make demand upon the taxpayer for payment.
>
> [N.J.S.A. 54:49-6a.]

Moreover, in administering the SUTPL, our Legislature authorized the Director to:

> make or cause to be made by any employee of the Division of Taxation . . . , an examination or investigation of the place of business, . . . the tangible personal property and the books, records, papers, vouchers, accounts and documents of any taxpayer.
>
> [N.J.S.A. 54:50-2.]

The Legislature further obligated taxpayers to produce for the Director, "all of the of the books, records, papers, vouchers, accounts and documents of the taxpayer and facilitate any such examination or investigation so far as it may be in his or their power so to do." Ibid.

To effectuate the goals of the SUTPL, our Legislature enabled the Director to "promulgate regulations and take other necessary or useful measures for the purpose of efficiently administering this act, securing the largest possible recoveries for the State, ensuring the integrity of the collection program and assuring fairness to taxpayers." N.J.S.A. 54:49-12.5; see also N.J.S.A. 54:50-1 (authorizing the Director to "make and enforce such rules and regulations as he may deem necessary").

2. Sales and Use Tax Act

The SUT imposes a tax on the receipts from every sale of tangible personal property and certain enumerated services in New Jersey, unless otherwise specifically exempted. N.J.S.A. 54:32B-3. All sales transactions are deemed taxable under the SUT, unless the non-taxable or tax-exempt status of any transaction is established by the person required to collect the tax or the customer. N.J.S.A. 54:32B-12(b). Thus, a presumption exists under the SUT that a sale is taxable unless the party required to collect the tax can affirmatively demonstrate otherwise. Newman v. Dir., Div. of Tax'n, 14 N.J. Tax 313, 318 (Tax 1994).

The SUT provides that "any person required to collect tax . . . keep detailed records of all receipts . . . charged or accrued, including those claimed to be nontaxable, and also of the nature, type, value and amount of all purchases, sales, services rendered . . . and to furnish such

10

information upon request of the director." N.J.S.A. 54:32B-24(5). The SUT further directs every person required to collect SUT to retain records "of every purchase . . . sale or . . . charge . . . and of all amounts paid, charged or due thereon" for a period of four years, including "each sales slip, invoice receipt, statement or memorandum . . . [and to] make available for inspection and examination at any time upon demand by the director. . . ." N.J.S.A. 54:32B-16.

The SUT further authorizes the Director to "make adopt and amend rules and regulations appropriate to the carrying out of this act and the purposes thereof." N.J.S.A. 54:32B-24. In furtherance thereof, the Director has promulgated regulations that similarly impose on sellers the obligation to maintain for inspection, "[a] true copy of all sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks . . . and records of every purchase . . . for a period of four years from the . . . filing of sales tax returns to which such records pertain." N.J.A.C. 18:24-2.3(a).

Moreover, when only "summary records" are being maintained, the vendor must nonetheless retain "sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks for a period of four years from the last date of the most recent quarterly period for the filing of sales tax returns. . . ." N.J.A.C. 18:24-2.4(a). Additionally, when a seller has not collected tax on a sale "due to the acceptance of a . . . resale or exemption certificate," the seller must retain "individual sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks recording such sales . . . for a period of not less than four years from the last date of the quarterly period for the filing of sales tax returns. . . ." N.J.A.C. 18:24-2.5.

However, when a vendor fails to maintain the records outlined above, it is within the Director's discretion to deem the vendor's records "insufficient" and to compute the correct tax due from any available information. Yilmaz, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 204, 212 (Tax

11

2005), aff'd, 390 N.J. Super. 435 (App. Div. 2007). This authority, and the standard by which the sufficiency of the records is measured, is reflected in the regulations as follows:

> (a) The records of a vendor may be deemed incorrect or insufficient if:
>
> 1. An evaluation of the accounting system discloses that the system does not provide adequate internal control procedures which assure the accuracy and completeness of the transactions recorded in the books and records.
> 2. The records are not maintained in accordance with the general outline of this chapter.
>
> [N.J.A.C. 18:24-2.15(a).]

Thus, under the SUT, when a taxpayer fails to retain the requisite business records, or the records maintained do not exhibit adequate internal controls, the Director may deem those records "insufficient." Thus, authorizing the Director to compute the tax due from "such information as may be available." N.J.S.A. 54:32B-19; see also Yilmaz, Inc., 390 N.J. Super. at 441; TAS Lakewood v. Dir., Div. of Tax'n, 19 N.J. Tax 131 (Tax 2000); Saulwil, Inc. v. Dir., Div. of Tax'n, 31 N.J. Tax 433 (Tax 2020). Similarly, the SUT's regulatory scheme provides that:

> [i]f the records of a seller are determined to be incorrect or insufficient, the return(s) filed on the basis of the information obtained from such records may be deemed to be incorrect or insufficient and the Director may determine the amount of tax due to the State by using any information available, whether obtained from the seller or from any other source.
>
> [N.J.A.C. 18:24-2.15(b).]

Here, plaintiff concedes that "some records were incomplete or unavailable," and that certain pages of the cash purchases journal were missing, and that cash register tapes were not maintained. However, plaintiff contends that the Balance Sheet (as of December 31, 2014), Profit and Loss statements (January 2011 to December 2014), General Ledgers (December 31, 2011 to December 31, 2014), and bank statements were sufficient to recreate plaintiff's actual sales and

tax liabilities.  In support of this position, plaintiff offers a "reconstruction of its [available] books and records" that attempts to recreate its gross sales and tax liabilities during the periods at issue. Notably, the reconstruction bears the captions "Recreated Sales" and "Recreated Tax" and acknowledges that plaintiff owed an "Additional Tax" or SUT liability of at least $3,920.57 during the audit period.  However, other than the limited documentation identified above, the plaintiff has submitted no independent corroborative evidence of its actual sales and SUT liabilities.

Moreover, in response to the Director's motion, plaintiff submits as an exhibit, a purported "expert analysis" or "expert report" that is based on "available data."  The court's review of this "expert analysis" or "expert report" reveals that it is undated, does not reflect the name of the individual or firm that prepared the report, does not bear the signature of the report's author, does not reflect the education, experience, or qualifications of the report's author, and does not identify the documentation that was relied on in generating the report.  Thus, the court affords no weight to the conclusions reached therein.

However, the court finds it important to highlight certain statements contained in the report. The report states that its author only "perform[ed] an independent review of the documentation provided to us" and did not "perform and audit, review or compilation procedures, and do[es] not provide any assurance on any of the documentation provided."  Moreover, the report states that the author "attempted to recreate the actual books and records of the entity," thus expressly acknowledging that plaintiff failed to maintain the books and records statutorily required, resulting in the report's author having to "attempt[] to recreate" them.

The report's author further admits that because the plaintiff "utilized a cash register for the sales and a manual system to record purchases that were completed in cash from the drawer . . . the purchases were at least underreported by the amount of cash purchases made from the drawer

and gross sales were underreported by the amount of cash paid out and not deposited." Thus, the report's author further acknowledges that plaintiff underreported some of its gross sales during the audit period.

Accordingly, based on the court's review of the motion record, the court finds, as the Director's auditor did, that plaintiff failed to maintain and/or preserve the business records required under the statutory and regulatory schemes. See N.J.S.A. 54:32B-16; N.J.S.A. 54:32B-24(5); N.J.A.C. 18:24-2.3(a); N.J.A.C. 18:24-2.3(b); N.J.A.C. 18:24-2.15(a). The motion record before the court confirms that plaintiff failed to maintain a cash disbursement journal, cash register tapes, or a cash receipts journal. In addition, plaintiff has failed to produce: (i) copies of its 2012 and 2013 CBT returns; (ii) profit and loss statements for 2010; (iii) trial balances for 2010 to 2014; (iv) shareholder 1040 returns for 2011 to 2014; (v) purchase invoices for October to December 2014; (vi) cash register tapes, including the last quarter of 2014; (vii) invoices supporting the cash purchase journal worksheet; (viii) Form 1099-K statements for all merchandise and credit card accounts; and (ix) the party event journal book for the audit periods, the plaintiff failed to produce these documents. Therefore, the court agrees with the Director's findings that plaintiff's business and financial records are insufficient. See Yilmaz, Inc., 390 N.J. Super. at 441.

When a taxpayer has failed to file a required return or report or has filed a return with "incorrect or insufficient" information, the Director is authorized to determine the amount of tax due from such information which may be available, including estimating the tax "on the basis of external indices. . . ." N.J.S.A. 54:32B-19; see also Kramer v. Dir., Div. of Tax'n, 24 N.J. Tax 105, 113 (Tax 2008). Moreover, if the Director's review of a vendor's business records reveals a lack of "adequate internal control procedures which assure the accuracy and completeness of the transactions recorded," the Director is authorized to "determine the amount of tax due . . . by using

any information available, whether from the vendor's place of business or from any other source." N.J.A.C. 18:24-2.15. The Director's review is not limited or confined to the business records made available by the taxpayer during an audit rather, the Director afforded "broad authority to determine the tax from any available information. . . ." Yilmaz, Inc., 390 N.J. Super. at 441.

### 3. Presumption of Correctness

The Director's "expertise in the highly specialized and technical area of taxation. . . is entitled to great respect by the courts," and its "interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable." Quest Diagnostics, Inc. v. Dir., Div. of Tax'n, 387 N.J. Super. 104 (App. Div. 2006) (citing Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 327 (1984)); see also Aetna Burglar & Fire Alarm Co. v. Dir., Div. of Tax'n, 16 N.J. Tax 584 (Tax 1997). Thus, the Director's assessment of "tax is presumptively correct" and the burden rests with the taxpayer to rebut that presumption of correctness. Quest Diagnostics, Inc., 21 N.J. Tax at 490; see also Atlantic City Transport. Co. v. Dir., Div. of Tax'n, 12 N.J. 130, 146 (1953).

When a taxpayer seeks to challenge the Director's audit practices or conclusion that a taxpayer maintained inadequate books and records, the taxpayer must present the court with "cogent evidence" to rebut the presumption of correctness. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption." Yilmaz, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 204, 236 (Tax 2005), aff'd, 390 N.J. Super. 435 (App. Div. 2007) (internal citations omitted). The evidence must "focus on the reasonableness of the underlying data used by the Director and the reasonableness of the methodology used." Ibid.

Here, plaintiff argues that the court should set aside the Director's audit as unreasonable. Plaintiff maintains that the estimated assessments were inaccurate and unreliable because the Director "treat[ed] bank deposits as income without accounting for non-sales items," and "fail[ed]

15

to account for [p]laintiff's cash drawer system." The plaintiff further contends that Director failed to "incorporate available financial data" and relied on arbitrary assumptions to estimate the SUT, CBT, and GIT-ER assessments. Moreover, plaintiff argues that summary judgment should be denied because "cross-examination of the auditor . . . may expose flaws in the audit methodology. . . ." Plaintiff maintains that it should be permitted to "probe the auditor's selection of data, the exclusion of relevant financial information, and the assumptions underlying the reconstruction of tax liability."

However, when a taxpayer fails to maintain the required business and financial records, the Director is statutorily authorized to make estimated assessments based upon all available sources of information. N.J.S.A. 54:32B-19. Moreover, the presumption of correctness will stand even if the audit practice is "imperfect." Yilmaz, Inc., 390 N.J. Super. at 437. In the absence of independent and credible "evidence that the amount of the assessment is far wide of the mark, the taxpayer cannot overcome the presumption simply by attacking the Director's methodology." Kramer v. Dir., Div. of Tax'n, 24 N.J. Tax 105, 106 (Tax 2008). Naked assertions made by a taxpayer without any supporting records or documentation are insufficient to overcome the presumption of correctness which attaches to the Director's assessment. T.A.S. Lakewood, Inc. v. Dir., Div. of Tax'n, 19 N.J. Tax 131, 140 (Tax 2000). The presumption of correctness is only overcome when the taxpayer presents independent, credible, and cogent evidence establishing that the methodology employed by the Director produced an "aberrant" result. Id. at 442.

The court's review of the motion record discloses that the auditor attempted to reconcile plaintiff's gross sales receipts for tax years 2010 through 2014 with "available materials including ST-50[']s, CBT filings, and bank deposits," revealing "unverified discrepancies." Thus, the auditor concluded that plaintiff's "reported gross receipts were not accepted as filed." The auditor

16

then attempted to reconcile plaintiff's cost of goods sold for the 2014 sample tax year using available "purchase invoices, available third-party information, and reported C[orporate] B[usiness] T[ax] purchases." However, because the plaintiff did not furnish receipts for goods purchased with cash, the auditor concluded that the "2014 purchases were . . . underreported." Therefore, the auditor imposed estimated SUT, CBT and GIT-ER assessments, which the court views as appropriate. See Yilmaz, Inc., 390 N.J. Super. at 441.

As articulated by our Supreme Court in Brill, "a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" 142 N.J. at 529 (quoting R. 4:46-2(c)). The issues presented under the motion in this matter concerns the "selection of data and methods employed to analyze that data" and does not implicate "questions of state of mind, or intent or credibility," thus, application of summary judgment is appropriate. Coliseum Pizzeria, Inc. v. Dir., Div. of Tax'n, 24 N.J. Tax 369, 377 (Tax 2008) (internal citations omitted).

Plaintiff has not tendered the court with any competent evidence that the data, formula, or methodology applied by the Director produced arbitrary or capricious assessments, thereby raising genuine issues as to the soundness and accuracy of the audit. Plaintiff has offered only unsupported claims and unsubstantiated allegations without any reliable independent evidence. A trial in this matter would seemingly amount to little more than the court's review of Director's audit and final assessment on the basis of plaintiff's unsubstantiated challenges.

Therefore, based upon the principles established in Yilmaz and the standards articulated by our Supreme Court under Brill, the plaintiff has failed to demonstrate the existence of a genuine dispute of a material issue of fact necessitating a trial. See 390 N.J. Super. at 441; 142 N.J. at 536. Accordingly, the Director's motion for summary judgment is granted.

17

III.    **Conclusion**

Accordingly, for the above stated reasons, the Director's motion for summary judgment is granted.

The court will enter a Final Order consistent with this opinion.